# SUPREME COURT OF TEXAS.

## GALVESTON SESSION, JANUARY, 1868.

### · DAVID TOOKE v. J. L. TAYLOR.

By our statute the maker, the surety, the indorser, and even the guarantor of a promissory note, may all be sued in the same action, and judgment had against the whole of them; which thereupon makes them all principals, and equally bound to the plaintiff for the satisfaction of that judgment.

Our statute authorizes suit against the maker and indorser at the same time; but it distinctly recognizes the nature of the contract, according to the law merchant, by interdicting judgment against the indorser, unless judgment be rendered at the same time against the maker. So also as to sureties and guarantors. (Paschal's Dig., Art. 1426, Note 535.)

The liability of an indorser having been fixed, he is not discharged by a third party becoming guarantor.

ERROR from Colorado. The case was tried before Hon. BENJAMIN SHROPSHIRE, one of the district judges.

The history of the case is given in the opinion of the court.

*Robert L. Foard,* for plaintiff in error.—I. If the surrender of the sixteen bales of cotton by Taylor to Pearsal discharged Tooke, unless that surrender was made with the consent and approbation of Tooke it was surely incumbent on Taylor to allege that consent in his petition, or to account for the value of the cotton, before asking judgment against Tooke.

It is settled, beyond doubt, that mere inaction on the part of the creditor will not discharge the surety. (15

xxxi—1

Johns., 433; 4 Wend., 570; 9 Wheat., 760; 1 Peters, 318; 1 Gall., 42.; 8 Tex., 69.)

II. As the law imposes no obligation on the creditor to obtain satisfaction from the principal, so in general he may stop short in any measures which he has begun for that purpose, or pursue them in such manner as seems advisable to him. (3 Binn., 520.) Thus, where the land of the principal was discharged from the lien of a judgment obtained against him in consequence of the omission of the creditor to revise it by *scire facias*, which land was afterwards sold to pay other claims, the surety was still held liable. (3 Penn., 437; 5 Watts, 179; 13 Ohio, 84; 3 Wheat., 520.)

And it matters not whether the collateral securities were given at the inception of the contract of surety or subsequently, or that the surety knew that they were given at all. (4 Johns. Chan., 123; Baker v. Briggs, 8 Pick., 122.)

It is well settled in the jurisprudence of Texas that the surety is substituted to all of the rights and remedies of the creditor, and to all of the collaterals and liens given by the principal debtor to the creditor, and he is even entitled to the transfer of the particular obligation or contract. And as our court has justly said, quoting a Georgia authority, which it fully indorses: "The substitution of the surety, it is pertinently said, is not for the creditor as he stands related to the principal after the payment, but as he stood related to the principal before the payment. He is subrogated to such rights as the creditor then had against the principal." (19 Tex., 445.)

The statute laws of our state invariably treat the indorser as a surety; he cannot be sued alone, with certain exceptions, unless the principal is sued at the same time. (Paschal's Dig., Arts. 225, 1426, Note 287.)

The statute of 1858, on the subject of principal and surety, makes no exception against the parties to negotiable paper, except they cannot, by notifying the creditor in

writing, force him to proceed on the obligation. (Paschal's Dig., Art. 4783.)

III. All sureties are allowed to plead and show that they are such, and have an issue made up and tried by the jury, and if found in their favor a judgment is entered up for their protection. (Paschal's Dig., Arts. 4785, 4786.) Article 4787 of Paschal's Digest provides a further protection, and grants it to any surety whomsoever in any undertaking. In article 4789 of Paschal's Digest we find a special provision that the remedies provided by the act for the sureties extend to indorsers, guarantors, drawers of bills which have been accepted, and to any other suretyship, whether created by express contract or operation of law.

Under the laws of Texas we hold, then, that the indorser is entitled to all the rights, privileges, and remedies of a surety, except in the case provided for in Paschal's Digest, Article 4783, Note 1072.

It has been held in Pennsylvania that the analogy between the position of an indorser and surety applies when there has been negligence or misfeasance in the management of the securities held by the creditor for the debt, or in the pursuit of his remedy against the parties primarily liable for its payment. (Lynn v. The Huntington Bank, 12 S. & R., 61; Remsay v. The Westmoreland Bank, 2 Penn., 203; The Bank v. Fordyce, 9 Barr, 206.)

No brief for the defendant in error has been furnished to the *Reporter.*

LINDSAY, J.—Upon a common promissory note, payable one day after date, executed by one Calvin Haynes to David Tooke, the plaintiff in error, on the first day of January, 1861, and assigned or indorsed in blank by Tooke to J. L. Taylor, the defendant in error, suit was instituted by Taylor at the April term, 1861, of the district court of the county against Haynes and Tooke, the maker and

indorser.   At the April term, 1867, (the case having remained on the docket by various continuances,). the plaintiff amended his petition, alleging, among other things, that one J. E. Pearsal, a. stranger to the contract, apprehending that the holder or indorsee of the note would sue out an attachment upon it against the maker, who was about to move out of the county, deposited, as a pledge, with the indorsee sixteen bales of cotton, sometime in the year 1861, to prevent him from suing out the attachment; that subsequently, in July, 1862, in consideration that the indorsee would release the sixteen bales of cotton, the said Pearsal executed and delivered to him the following instrument in writing, to wit:

"This is to certify, that I have become the security of Calvin Haynes on a note of $569 64, payable one day after date, to David Tooke or order, with ten per cent. interest, and indorsed to J. L. Taylor by said Tooke, for the payment of which I had pledged sixteen bales of cotton, now released by this instrument.   Said note was due January 1, 1861.                                    J. E. PEARSAL.

"JULY 7, 1862."

By the amended petition, the plaintiff asked leave to make said Pearsal a party defendant; and for citation against him, which was accordingly granted; and afterwards the cause was tried and judgment rendered against the maker of the note, the indorser, and the guarantor, for the amount of the note sued on, together with the accrued interest.

The record in the case exhibits the facts as above stated, with the additional fact of the value of the cotton on deposit while it was in the possession of the indorsee or holder of the note.

By our statutes the maker, the surety, the indorser, and even the guarantor of a promissory note, may all be sued in the same action, and judgment had against the whole of them; which thereupon makes them all principals, and

equally bound to the plaintiff for the satisfaction of that judgment.

A simple recurrence to the principles of the law merchant, which determines the rights and liabilities of the parties to a promissory note that has been assigned, and to the nature of the responsibilities which are assumed by a guarantor of the ultimate payment of such obligations, will afford a ready solution of the principles involved in this case. The nature of the contract between the holder and the indorser of a promissory note ·is, that the holder shall seek payment of the maker before resorting to the indorser. Our statute authorizes suit against the maker and the indorser at the same time; but it distinctly recognizes the nature of the contract, according to the law merchant, by interdicting judgment against the indorser unless judgment is rendered at the same time against the maker. So also as to sureties and guarantors. By the law merchant the liability of the indorser was fixed by protest and notice. By our statute this method of fixing the liability is superseded by requiring the holder to bring suit at the first term of the court after maturity, or to the second term, showing cause why it was not brought to the first term. The liability, therefore, of the plaintiff in error was fixed in this case by bringing suit to the first term of the court, and he could not be absolved from it except by a satisfaction of the demand. Did the acts of the guarantor, Pearsal, so operate as to produce that result? He was a stranger to the original contract, and whatever may have been the motives prompting him to make a pledge of property to secure the ultimate payment of the note, or to assume the legal responsibility as guarantor of becoming liable for it upon the contingency of the failure of the maker and indorser, is wholly immaterial. The liability of the indorser once fixed by the statutory diligence of the holder of the note, he cannot escape it short of the actual satisfaction of the demand. It is readily conceded to be

the law, that where there is a positive agreement between the holder and the maker of the note, founded upon a valuable consideration for any delay. in the enforcement of the demand against the maker, that agreement would enure to the benefit of the indorser, whether he had notice of it or not. But such is not the state of the case here. A pledge of property was made by Pearsal, a stranger to the original contract; in redeeming that pledge he assumed the position of a guarantor, which only bound him to pay upon the contingency that the parties to the note failed to pay; and this volunteering, for what reasons need not be inquired into, on the part of Pearsal, worked no prejudice to the rights of the indorser, and he cannot avail himself of any advantage from it. The only effect of both the pledge and the guarantee was to strengthen and increase the security of the holder, without in any way impairing or affecting the rights or liabilities of the other parties to the instrument. Upon an actual pledge of property by the maker to the holder and his subsequent surrender of it the law is very different. Such a pledge would be for the benefit of the indorser as well as of the holder; and in surrendering it the holder would be bound to give the indorser credit for the value of the property so surrendered.

We can discover no error in the judgment of the court below, and it is therefore

AFFIRMED.