H. J. LAVEY ET AL., APPELLANTS, VS. FRANCIS DOIG, APPELLEE.

1. The right given by legislation to have a jury trial in a contested will case in the Circuit Court prior to the adoption of the Constitution of 1868 was not intended to be preserved by that Constitution on a similar trial in the County Court.

2. Under the Constitution of 1868, as amended in 1875, the County Court had power to try a contested will case without a jury.

39

Appeal from the Circuit Court for Alachua county.

The facts of the case are stated in the opinion of the court.

*Ashby & Thrasher* for Appellants.

. BRIEF OF APPELLANTS.

The only question we propose to discuss in this case is, whether or not the parties were entitled to a trial by jury.

The Constitution of Florida in force when this case was tried provided that " the right of trial by jury shall be secured to all and remain inviolate forever."

A similar provision was contained in the first State Constitution of Florida, and construed by Chief-Justice Douglass in the case of Flint River Steamboat Co. vs. Roberts, Allen & Co., 2 Fla., 102. He said that the meaning of the provision was that " the right shall (in all cases in which it was enjoyed when the Constitution became binding and obligatory) continue unchanged." ·

Judge Cooley, in his work on Constitutional Limitations, page 512, takes the same view as Judge Douglass, and in note 3, page 512, cites many authorities in support of the position.

It then the right of trial by jury was enjoyed in a con- tested will case when the Constitution became binding and obligatory the parties were entitled to it in this case.

The act of January 8, 1853, McClellan's Digest, p, 986, sec. 5, was unquestionably in force when the Constitution became binding and obligatory and this act provides for a trial by jury.

We submit that the orders appealed from should be re- versed.

*S. Y. Finley* for Appellee.

RANEY, C. J.: Upon an issue made in the County Court of Alachua county, as to the validity of a will offered for probate, the caveators demanded a jury to try the issue, but the County Judge refused the demand, and the trial of the case proceeded against their objection and exception without one, and resulted in a judgment in favor of the will and admitting it to probate. An appeal was taken to the Circuit Court, where the judgment was affirmed, and from the latter court the case has been brought here.

The only point discussed is, that of a right to a jury trial in the County Court.

"An act to provide for the contesting the validity of wills in the Circuit Courts of this State," approved January 8th, 1853, section 5, p. 986, McC's. Dig., is in the following language:

That in case any will shall be offered for probate and the same shall be contested, it shall be the duty of the Judge of Probate to certify the fact and send up the original will to the Circuit Court of the same county, and that an issue shall be made up in the Circuit Court under the direction of said court, and the validity of the will tried therein upon the principles of law in such cases, and the verdict of the jury and the judgment of the court upon the validity of the will shall be certified to the Probate Court, and the original will, if established, shall be sent back to the Court of Probate to be recorded, and upon the proceedings so certified to the Court of Probate said court shall proceed to grant letters testamentary or of administration, and do all other things necessary to be done to have the will carried into effect, or the estate properly administered as heretofore.

At the time this statute was enacted the Constitution gave the Circuit Courts original jurisdiction in all matters, civil and criminal, not otherwise excepted in that organic law, and ordained that the General Assembly should provide by

law for the appointment in each county of an officer to take probate of wills, to grant letters testamentary, of administration and guardianship, to attend to the settlement of the estates of decedents and of minors, and to discharge the duties usually pertaining to the Courts of Ordinary, subject to the direction and control of the Courts of Chancery as may be provided by law. Sections 5 and 9, Article V, Constitution 1838; Th. Dig, pp. 53, 57. The Legislature of 1845 provided for the appointment of a Judge of Probate, whose duty should be as specified by the preceding language of the Constitution down to and inclusive of the words " Courts of Ordinary," section 2, p. 57, Th. Dig., and enacted in the same section that an appeal should be from any final order or decision of the Judge of Probate to the Circuit Court of the county.

Prior to the approval of the act of 1853 the statutes provided for the admission to probate of wills and testaments of real and personal property upon a prescribed oath of the executor or executrix, or, if there was neither, upon the oath of any other credible person having no interest under the will or testament. Any person interested might by petition apply to the Judge of Probate for a revocation of the probate so made, and after answer thereto by the executor or executrix, administrator or administratrix, the proofs were to be taken in open court and the Judge would confirm or revoke the probate, " according to the law and justice of the case." Sections 1 and 2, p. 193, Th. Dig., Act November 20th, 1828.

There was nothing in the Constitution of 1865 changing this status of legislation.

The Constitution of 1868 gave the Circuit Courts original jurisdiction in all cases of equity, and also in all cases at law involving the title or right of possession of, or boundaries of real property and of the legality of any tax, im-

post, assessment, toll or municipal fine, and in all other cases in which the demand or the value of the property in controversy exceeded three hundred dollars. Section 8, Article VI.

The same Constitution gave the County Courts "full surrogate and probate powers, but subject to appeal," and declared : " Provision shall be made by law for all other powers, duties and responsibilities of the County Courts and Judges." Section 11, Article VI.

The first Legislature convened under this instrument passed " An act to organize the County Courts of the several counties of this State, and to prescribe the mode of practice in said courts." Chapter 1627, approved August 4th, 1868. Section sixteen (section 8, p. 326, McC.'s Dig.,) enacts that the County Court, as a Court of Probate, shall be open at all times for the transaction of its business, and the Judge thereof shall have all the powers and perform all the duties of the Judges of the Courts of Probate in the several counties of this State, except where the duties conferred by law upon the Judges of Probate heretofore are imposed upon other officers by the Constitution of this State. Sections 16 to 22, inclusive, regulate the practice of this court in the exercise of its " probate jurisdiction." Section eleven, the process and pleadings having been previously provided for, says : Upon filing the answer the cause shall be at issue and the proof shall be taken in such manner as may be prescribed by the Judge, and the cause may be heard in such manner as the court may direct. Section 11, p. 326, McC.'s Dig. Sections 19, 20, and 21 authorize and regulate appeals to the Circuit Court from any final judgment, order or decree made in the exercise of its probate jurisdiction. Sections 21 and 22, p. 328, McC.'s Dig.

There is no provision in this statute for a jury in the trial of any matter within the probate jurisdiction of the County

Court, but is an express provision for a jury in the exercise of its civil common law jurisdiction, which extended over cases where the amount in controversy did not exceed three hundred dollars, and a similar provision as to its criminal jurisdiction, as there is in another act, as to its powers in cases of forcible entry and unlawful detention of real estate. It is not necessary to refer to the amendments to the Constitution made in the year 1875, further than to say that they made no material change in the original jurisdiction of the Circuit Courts, but gave them "appellate jurisdiction of matters pertaining to the probate jurisdiction and the estates and interests of minors in the County Courts," section 8, Article VI.; and gave to the County Court "power to take probate of wills, to grant letters testamentary and of administration and guardianship, to attend the settlement of the estates of decedents and of minors and to discharge the duties usually pertaining to courts of probate, subject to the direction and supervision of the appellate and equity jurisdiction of the Circuit Courts as may be provided by law." Section 11, Article VI.

The third section of the Bill of Rights of the Constitution of 1868, was as follows: The right of trial by jury shall be secured to all, and remain inviolate forever; but in all civil cases a jury trial may be waived by the parties in the manner to be prescribed by law.

The effect of the first clause of this section of the Bill of Rights was of course not to extend the right of jury trial to any case in which it did not obtain before the adoption of the organic law of which it was a part. Cooley's Con. Limitations, m. p. 410, note 2; Blanchard vs. Raines, 20 Fla., 467.; 2 Strob., 560; Byers vs. Corn, 42; Penn. St., 89; 64 Cal., 266; 51 Conn., 113. The contention, however, is that at the time of the adoption of the Constitution of 1868 the statute set forth at the outset of this opinion

was in force and gave to litigants the right to a jury in contest over the validity of a will or admission to probate. If the effect of the Constitution was to preserve the right to a jury trial given by the statute in question, such right could not be abridged by either positive legislation expressly denying the right in a case of the character covered by the statute, or by the omission of the Legislature to provide for a jury. Thomas vs. Bibb, 44 Ala., 71.

The *right* to a jury trial did not exist in the Ecclesiastical Courts, nor, independent of statute, has it existed in the Probate Courts of this country or other courts exercising the usual powers of Courts of Ordinary. The same is true of the Chancery Court. Blackstone's Com., Bk. III, m. p. 61, 67; Tucker's Blackstone, p. 65; Williams on Executors, (6, Am. Ed.,) Vol. 1, pp. 329, 336, note (o. 3); Flint River Steamboat Co. vs. Foster, 5 Ga., 206; Hagany vs. Cohen, 29 O. S., 82; Higbee vs. Bacon, 11 Pick., 423; Wood vs. Sloan, 39 N. H., 575; Patrick vs. Cowles, 45 N. H., 553; Wood vs. Farwell, 97 Ill., 613; Hayes vs. Hayes, 48 N. H. 226; Parsons vs. Bedford, 3 Peters, 433; Proffatt on Jury Trials, section 88; Stilwell vs. Kellogg, 14 Wis., 461; Sands vs. Kimbark, 27 N. Y., 147; Flaherty vs. McCormick, 113 Ill., 538.

It is plain that such was the law in this State even under the statute of 1828, sections 1 and 2, p. 193 Th. Dig., *supra*. It is equally clear that the act of 1853 did not introduce the element of a jury into the Probate Court. The effect of the statute was to take from that court and give to the Circuit Court the original trial of all cases involving the validity of a will. Whether this was a legitimate exercise of a legislative power, is now immaterial, even if it be an open question, as the organic law of 1838 has long since been superseded.

The Constitution of 1868 did not continue in the Circuit

Courts the power given by the act of 1853, but in distribut-
ing the judicial power of the State gave to the County
Courts "full surrogate and probate powers, subject to ap-
peal." This grant vested in the County Court the original
jurisdiction to try the validity of any paper propounded as
the last will and testament of a decedent. Assuming that
the grant of equity jurisdiction gave the Circuit Courts
concurrent original jurisdiction of such cases, Ritch & Co.
vs. Bellamy, 14 Fla., 537, such concurrent jurisdiction was
inherent in the constitutional grant of equity powers, and
independent of the statute of 1853. By this distribution of
judicial power the organic law of 1868 repealed the statute
of 1853, and if the Circuit Court had after the adoption of
that Constitution, any power to try a case of this kind now
before us, except on appeal, it was by virtue of the grant of
equity jurisdiction. This grant of equity jurisdiction,
whether it carried the power to try cases of this character,
or did not do so, did not deprive the County Court of the,
at least, concurrent power to try such a case. The grant to
the County Court did not make the provisions of the act of
1853 applicable to its exercise of the "probate and equity
powers" given it. The Constitution, by its grant of juris-
diction to the Circuit Court, negatived the idea of the act
of 1853 continuing as either defining or regulating the pow-
ers of that court, and it did not make a jury trial a feature
of the County Court in probate and surrogate matters, but
gave it such powers to be exercised in the mode usual in
such courts. Our opinion is that the act of 1853 is incon-
sistent with and was abrogated by the Constitution. of 1868,
and that power of the County Court to try a contested will
case was never controlled by it. In a word, the Constitu-
tion of 1868, instead of continuing any right given by the
act in question, necessarily repealed that act. Such is
clearly the effect of the provisions set forth, and independ-

ent of any subsequent legislation to the contrary, of which there was none, the County Court had, as it naturally has when there is no statutory or constitutional regulation to the contrary, the power to try the validity of a last will and testament without a jury.

The probate legislation of 1868 referred to above comports with the views expressed. In omitting to provide a jury trial it violates no right secured or continued by the Constitution, but is in full accord with the spirit of that instrument. The amendments of 1875 show no purpose to re quire a jury in the disposition of such an issue.

The decree should be affirmed, and it will be ordered accordingly.