1. TRUSTS (§ 298*)—ACCOUNTING BY TRUSTEE—JURISDICTION—SURROGATE'S
   COURTS.
   Code Civ. Proc. § 2472a, as added by Laws 1910, c. 576, providing that
   the Surrogate's Court has jurisdiction on a judicial accounting or pro-
   ceeding for the payment of a legacy to ascertain the title to any legacy
   or distributive share, to set off a debt against the same, and, for that
   purpose, ascertain whether the debt exists, to affect the accounting party
   with a constructive trust, "and to exercise all other power, legal or equit-
   able, necessary to the complete disposition of the matter," does not by
   the quoted phrase give authority to the Surrogate's Court on a petition
   of an accounting trustee of a decedent, alleging that as trustee under
   the will of the decedent's wife she paid from the fund of the wife's es-
   tate certain sums in partial discharge of a mortgage on lands of the hus-
   band's estate, to decree that the petitioner be subrogated to the rights
   of the mortgagee, to whom the payment was made.
   [Ed. Note.—For other cases, see Trusts, Dec. Dig. § 298.*]

2. STATUTES (§ 194*)—CONSTRUCTION—LANGUAGE OF STATUTE—GENERAL AND
   SPECIFIC TERMS.
   Where statutory words of specific and inevitable purport are followed
   by words of general purport, the application of the latter is generally
   confined to the subject-matter disclosed by the former and limited in
   their effect by the specific words to which they are joined.
   [Ed. Note.—For other cases, see Statutes, Cent. Dig. § 272; Dec. Dig.
   § 194.*]

3. JURY (§ 19*)—RIGHT TO TRIAL BY JURY—PROCEEDINGS IN SURROGATE'S
   COURT.
   Code Civ. Proc. § 2472a, as added by Laws 1910, c. 576, giving the sur-
   rogate additional jurisdiction on a judicial accounting or proceeding for
   the payment of a legacy, and providing that he must order the trial of
   any controverted question of fact of which the other party has constitu-
   tional right of trial by jury, and seasonably demands it, authorizes such
   trial by jury only as to questions not triable before the surrogate until
   made so by statute, since issues framed in probate proceedings are not
   among those in which, before the adoption of any of the state Constitu-
   tions, trial by jury had been used.
   [Ed. Note.—For other cases, see Jury, Dec. Dig. § 19.*]

Proceedings for the judicial settlement of the account of Mary F.
Clyne, as testamentary trustee under the last will and testament of
Thomas McDonald. Decree entered.

Theodore Burgmyer (Lewis C. Grover, of counsel), for trustee.
Pickett & Miller, for Dora McDonald, as executrix, etc., of Thomas
H. McDonald.
Maurice Marks, for Anna H. McDonald.
Hugo Wintner, special guardian for Constance Marie McDonald,
infant.
George W. McKenzie, special guardian for Thomas P. McDonald,
William V. McDonald, Marie C. McDonald, John T. McDonald, Theo-
dora F. McDonald, Edmond C. McDonald, and Emma J. McDonald,
infants.
Joseph A. Kennedy, special guardian for Donald B. McDonald.

KETCHAM, S. [1] The trustee under the will of the decedent above named alleges that as trustee under the will of the decedent's wife she paid from the funds of the wife's estate certain sums in partial discharge of a mortgage upon lands belonging to the estate of the husband; and, upon further averments tending to support the claim, she asks a decree that she, as trustee of the other estate, be subrogated to the rights of the mortgagee to whom such payment was made.

The question thus presented is of equitable cognizance and beyond the jurisdiction of this court (Bevan v. Cooper, 72 N. Y. 317; Matter of Wagner, 119 N. Y. 28, 23 N. E. 200; Sanders v. Soutter, 126 N. Y. 193, 27 N. E. 263; Matter of Randall, 152 N. Y. 508, 46 N. E. 945; Matter of McAleenan, 53 App. Div. 193, 65 N. Y. Supp. 907; Matter of U. S. Trust Company, 80 App. Div. 77, 80 N. Y. Supp. 475; Matter of Bunting, 98 App. Div. 122, 90 N. Y. Supp. 786), unless the power to dispose of it has been given by section 2472a, which was added to the Code of Civil Procedure in 1910. That section is as follows:

"The Surrogate's Court has also jurisdiction upon a judicial accounting or a proceeding for the payment of a legacy to ascertain the title to any legacy or distributive share, to set off a debt against the same and for that purpose ascertain whether the debt exists, to affect the accounting party with a constructive trust, and to exercise all other power, legal or equitable, necessary to the complete disposition of the matter. He must order the trial of any controverted question of fact of which either party has constitutional right of trial by jury and seasonably demands the same." Laws 1910, c. 576.

New powers are thus bestowed to ascertain the title to a legacy or distributive share, to set off a debt against the same, and to ascertain whether the debt exists, and to affect the accounting party with a constructive trust. In none of these specific grants of jurisdiction is there included any right to decree that a party, not the accountant, or the accountant in a representative capacity foreign to that in which he is accounting, be subrogated to a demand against the trustee in the character in which he accounts. But the words by which jurisdiction is given for the several purposes enumerated are followed by the phrase "and to exercise all other power, legal or equitable, necessary to the complete disposition of the matter."

Under this language it is claimed that the surrogate may now assert any equitable power necessary to a complete determination of the accounting. This, if it involves anything in advance of the law as it was before the enactment quoted supra, must mean that the court may determine, by the exercise of equitable powers, all controversies among the parties to the accounting in any manner relating to or provoked by any rights or duties which have arisen among them with regard to the estate, fund, or trust which is the subject of the accounting. This power, not expressed or implied in any of the precise words of grant found in the section, can have no existence unless it be discovered in the general phrase with which the sentence closes. Is this closing expression to be given a meaning independently of the phrases with which it is associated, or is it to be characterized and limited by the other members of the sentence?

[2] Where words of specific and inevitable purport are followed by words of general purport, the application of the last phrase is general-

ly to be confined to the subject-matter disclosed in the phrases with which it is connected. It is known by the company which it keeps; and, though capable of a wider significance if found alone, it is limited in its effect by the words to which it is an adjunct. It may strengthen the general structure, but it cannot exceed the original outline. Thus it would seem that the whole purpose of the statute was defined by the earlier expressions, which aptly confer specific authority to do particular things, and that the last phrase was intended, not to transcend the definite grants, but rather to reinforce and amplify them by an energy always to be confined within their scope. In this view, the jurisdiction "necessary to the complete disposition of the matter" would be ·exhausted in the fulfillment of the authority to try the title to a legacy or distributive share, to set off a debt, to ascertain the existence of the debt, or to affect the accounting party with a constructive trust. Moreover, the text of the statute is not that these legal and equitable powers shall be used for the disposition of "the accounting." They are granted for the disposition of "the matter," and "the matter" can be more rationally referred to one of the matters embraced in the earlier grant of jurisdiction than to the matter of the accounting.

The present case illustrates the rule. It is the more easily believed that the final phrase quoted above was intended to be read only in connection with its predecessors, since, if it were construed to contain a separate and plenary jurisdiction, it would present the absurdity of apparently bestowing the right and duty of a complete disposition, without adequate means to fulfill or enforce the decree in which the disposition might take form. If the question of subrogation were disposed of in this proceeding, the disposition could not proceed beyond the empty finding. There is no mechanism in the Surrogate's Court for effectuating such result. A court of equity would not content itself with a mere declaration of the right of subrogation. It would cancel the satisfaction of the mortgage, clear the record of the embarrassment which the satisfaction piece imposes, and proceed to the enforcement of the mortgage in favor of the person subrogated and the foreclosure of all subordinate rights. The mind does not readily impose upon the words bestowing these general legal and equitable powers an interpretation which would reduce both the provision and the court to such a helpless attitude.

The subject might be dismissed with these observations, were it not that they in part collide with an opinion of unusual dignity. It does not seem to have received judicial construction, but the accountant cites the report of the Law Reform Committee of the Association of the Bar of the City of New York (N. Y. L. J., April 28, 1911), which maintains that the surrogate has been given the right "to exercise all power, legal or equitable, necessary to the complete disposition of an accounting." This is the judgment of a committee imposing, not only in number, but in the gravity and influence of its scholarship. This committee was in large part responsible for the reforms in the procedure of Surrogates' Courts which are embodied in sections 2472a, 2547, 2624, and 2625 of the Code, as well as those which were effectuated by the repeal of sections 2647–2653,

and it is devoted to the further amendment of the law on the same subject. The report was recently approved at a general meeting of the association (N. Y. L. J., May 19, 1911), when its recommendations were adopted and the committee was authorized to take certain measures to secure the further legislation therein outlined.

The opinion of these gentlemen is properly cited as authority. Coke says that the poets and philosophers may be resorted to for guidance in the law. The wisdom which these gentlemen pledged to their task, the research and reflection which have necessarily ripened and concentrated their general learning, and the acceptance of their labors and their reasoning by the body of their association would all tend to the adoption of their views; but authority which is less than judicial, however commanding its source, is controlling only so far as its argument controls. If, upon a review of the whole paper, serious misconceptions are found at the base of any of its deductions, a fear may, perhaps, result that none of its conclusions have received the sedate and responsible attention which the subject deserves and the character of its authors would promise. The committee's interpretation of section 2472a is found, with the discussion of allied subjects, in the following:

"By the enactment of the surrogates' bills jointly advocated by the State Bar Association in 1910, proceedings for the revocation of probate of wills of personal estate were abolished, wills of real estate can no longer be re-examined by ejectment or partition, and the surrogate was given power to charge an accounting executor or administrator with a constructive trust and to ascertain the title to any legacy or distributive share, to set off any debt against the legatee or next of kin, and to exercise all power, legal or equitable, necessary to the complete disposition of an accounting."

This certainly pronounces for a construction which would devolve upon the surrogate far greater faculties in equity than would be involved in the disposition of the questions specifically committed to him in the earlier portions of section 2472a; and it is evident that the learned committee have seen in these new faculties a power to dispose of every question, legal or equitable, found in an accounting.

The accuracy of the report is marred by its assumption that the powers necessary to the complete disposition of "the matter" are the same as if it had been enacted that they were to be exercised in the disposition of "the accounting." This substitution of a word, by no means obviously equivalent, is a tour de force by which the expounders impose the weight of their own construction upon language too feeble to endure it. Of course, if the power had been given in words to dispose of "the accounting," the section would have lent itself more amiably to the committee's interpretation.

But graver improvidence is revealed, and a review of the report is none the less profitable to the present inquiry if it shall also suggest deliberation, if not reconsideration, with respect to the proposal that section 2653a, providing for an action to test the validity of probate, be repealed. The report supports this recommendation as follows:

"Under this legislation (of 1910) any party having a constitutional right to a jury trial of any issue arising in the Surrogate's Court is entitled to have

such issue transferred to the Supreme Court for such jury trial. It remains, however, uncertain whether after such a jury trial of a will of real estate the defeated party is not entitled to a second jury trial of the same issue under section 2653a. There is no doubt that if a will of real estate is tried by a surrogate, the defeated party has an absolute right to a retrial thereof by jury under section 2653a."

In the last session of the Legislature, the Bar Association inspired the amendment to section 2625 (Laws 1910, c. 578), by which it is now provided that the decree of the surrogate admitting a will to probate shall be conclusive as to real property "as an adjudication of the validity of the will." The committee submit the interpretation that, by this section, "wills of real estate can no longer be re-examined by ejectment or partition."

Relying upon this amendment and persuaded that section 2472a contains adequate recognition of the ancient and constitutional right to jury trial, the committee regard it as essential to the symmetry of the system which they have labored to build that the action under section 2653a be abolished. This is a consummation most devoutly to be wished, if the Code as it now stands contains express and adequate assurance of a jury trial as to wills both of real and personal property. Is this assurance contained in section 2472a of the Code, in which alone the committee believe they find it? It is a misfortune, probably curable by indulgent construction, that the section in question contains no express direction that the trial thereby contemplated is to be had by a jury.

[3] But it is argued that, by virtue of this section, "any party having a constitutional right to a jury trial in any issue arising in the Surrogate's Court is entitled to have such issue transferred to the Supreme Court for such jury trial," and the fear is harbored that "after such a jury trial of a will of real estate the defeated party" may secure "a second jury trial of the same issue under section 2653a." It will be assumed, but without confidence, that the provision for jury trial with which section 2472a closes is not restricted, by its contextual relation, to the class of cases and questions treated in the preceding sentence.

In the text of the report "such a jury trial of a will of real estate" is manifestly a trial only to be accorded to one whose right thereto is constitutional. But, if there be no such right as to the issues in a probate case, section 2625 assails the Constitution; and the proposed repeal of section 2653a would not only leave the parties concerned in a will of real estate without a vestige of the right of jury trial, unless the right was restored by an adjudication that the provision making the decree of probate conclusive was unconstitutional, but would in any event abolish all right to the review of a will of personalty before a jury.

Could the amendment of section 2625 prevail, there would be taken away the right of jury trial in ejectment or partition; and, if such resort to a jury as is offered by section 2653a were then destroyed, not only the right of jury trial of the question "will or no will" would be extinct, but the ceremony itself, whether by right or permission, would become unknown, except in the county of New York, where

by an eccentric statute the surrogate might still award it as an act of grace (Code Civ. Proc. § 2547), or in the trial permitted by an appellate court upon reversal of the surrogate. It is the result of anxious study that there is no constitutional right of trial by jury in a proceeding for the probate of a will of real estate, and it will doubtless be confessed that it has never existed as to a will of personalty.

It is not meant that the organic law has not secured inviolably the right to a trial before a jury of the questions which concern the validity of a will. In ejectment or other possessory actions affecting land, the fact and efficacy of a will were traditionally triable by jury with the other issues, and the right in such cases has been preserved in the Constitution. But the issues framed in a proceeding for probate have not been found among those in which, before the passage of any of the Constitutions of the state, "trial by jury had been heretofore used." The ancient suit in equity which the heir, disappointed by the will, might bring against the devisee when there was an intervening estate by which both were deprived of the right of immediate possession and, therefore, of an adequate remedy at law, was triable before a jury as a matter of right. It concerns us not to consider how erratic was this recognition of a right of jury trial in equity, though it has been held to be inconsonant with our institutions, and therefore not of our system. Cummins v. Cummins, 1 Marv. (Del.) 423, 31 Atl. 816. The action was an equitable aid to or substitute for ejectment; and its usage of jury trial has nothing to do with the mode of trial in probate, since it was neither a proceeding in a probate court nor a proceeding for probate. It was but a resort to equity for an injunction to restrain the defendant from asserting as a defense in ejectment the existence of the outstanding estate in a stranger. The right of a jury trial in a probate proceeding has been accorded in Texas, but under a Constitution which in its wide departure from the Constitution of this state makes analogy impossible. Tolle v. Tolle, 101 Tex. 33, 104 S. W. 1049; Cockrill v. Cox, 65 Tex. 669; Davis v. Davis, 34 Tex. 15.

Despite these and other casual traces, it may be affirmed that, in this state and others in which the constitutional safeguard is preserved only in the cases in which "it has heretofore been used," the right was not preconstitutionally known, and therefore could not be continued. It has not been found that the question has been discussed in the courts of this state, but the right has been denied to the parties to a probate proceeding, in the trial thereof, under Constitutions substantially like that of New York. Lavey v. Doig, 25 Fla. 611, 6 South. 259; Schmidt v. Schmidt, 47 Minn. 451, 50 N. W. 598; Cummins v. Cummins, 1 Marv. (Del.) 423, 31 Atl. 816; Gilruth v. Gilruth, 40 Iowa, 346; Wills v. Lochnane, 9 Bush (Ky.) 547; Moody v. Found, 208 Ill. 78, 69 N. E. 831.

Can it be said, however, that the fair effect of section 2472a is that the trial, when demanded, must be directed of any question of fact which, though it be embraced in the issues in the probate proceeding, is such that a party to the controversy would have the right to submit the same to a jury if it were presented in some other con-

ceivable case? The report implies a rejection of this meaning. It is therein said that by the legislation of 1910 "any party having a constitutional right to a jury trial in any issue arising in the Surrogate's Court is entitled to have such issue transferred to the Supreme Court for such jury trial." This is consistent only with the conviction that it is one of the issues in the probate proceeding which is to be sought for, and that the demand cannot prevail unless the constitutional right to the trial of that issue by jury is found. No other meaning can be given to the words "controverted question of fact." They can intend nothing but a question controverted in the proceeding. Such a question can be nothing but an issue in the pending case. The only way in which a controversy can be discerned is by the pleadings in the immediate case; and, when the allegation of one party is traversed by another, the exitus of the conflict is interchangeably the controverted question or the issue. It would be a futility beneath argument to pretend that a question is disputed in some other case when we know that it is disputed in the only case in which the dispute is to be regarded. The pretense is worse when there is no such other case and no assurance that there ever will be.

The query which the statute imposes in a given case must be whether a right of trial by jury adheres to the controverted question now made, the question here controverted, the issue prepared for and entitled to trial in this case. The party whose interests are involved in a proceeding only triable by the court cannot have the right to a jury in that proceeding, however obvious might be his constitutional privilege as to the same interests if they were litigated in another and different case, itself primarily triable by jury.

Nearly every suit in equity presents some dispute which might have arisen at law, but as to which there is no right to jury trial. One has the right of trial by jury of an action upon a bond; but, if it be a bond secured by mortgage, his right to jury trial is not available in an equity action to foreclose the mortgage. In such action, however probable might be the award of trial by jury in the discretion of the court, the party could not constitutionally demand it on the issue of forgery, fraud, duress, or payment. In an action for cancellation for fraud or other wrong, questions precisely the same in essence as would arise in an action for damages resulting from the wrong may be presented; but neither party can assert the constitutional right in the equity action just because that right would have been assured to him if the same transaction had been brought to hearing in the other case. Instances could be multiplied in which controversies, conceivably the subject of jury trial if the same should arise in a case at law, must be disposed of without the exercise of that right when they are entangled in the issues of an equity action where they properly belong. No man could ask for jury trial in an injunction action, on the ground that the contract upon which the prayer for injunction was based would be the subject of a jury trial if a money demand upon the contract were presented in another action. Neither party in an accounting in equity could ask for a jury as of right because, in an action upon a single item of the account, maintained at law, a jury trial

would be absolutely available. Neither party in specific perform-
ance could demand a jury, though they might both have that mode of
trial if the action were under the contract for damages. A probate
proceeding, wherever pending, is the same in kind. Conceive, then,
of a probate proceeding affecting a will of real estate, brought in the
Supreme Court. What would be the answer therein to a demand
of jury trial, not in appeal to the discretion of the court, but in as-
sertion of a constitutional right?

From these illustrations the principle apparently results that the
right to a trial by jury of any issue, any question, any controversy,
depends solely upon the test, is the fact to be tried properly involved
in and material to the disposition of the case in which the dispute
arises, and, if yes, is the case one in which by the nature habitually
assigned to it in the preconstitutional period a trial by a jury was
used? The test cannot be of the nature of the question. The sole
criterion is the nature of the present case in which the question is
found and of the form of trial established in like actions when the
Constitution supervened upon the colonial law.

Before the guaranty of the Constitution, an equity action would,
of course, never reach the jury, however the issues might incidentally
involve a grievance or defense which, if it had escaped from the folds
of equity, would have been triable by jury. The promise of the Con-
stitution, broad as it is, was adjusted to this condition and secured the
jury trial only in the cases where "it had been heretofore used." A
constitutional provision which is confined to the preservation of a right
only as it exists and which does not affect to invent or affirmatively
grant any new right must have this negative effect, when it says that
all cases of the sort which have been usually tried before a jury shall
be so tried, it leaves alive, if it does not impliedly affirm, the law that
all cases not triable by jury shall still be tried by the court. The
right of jury trial does not, in strictness, adhere to the cause of action
or defense as either of them existed ante litem motam. It pertains
entirely to procedure. It controls the course of a living case. Its
existence depends upon the normal progress of the kind of case in
which it is found. It cannot spring into influence until there is an
actual litigation in which it obtrudes for recognition, and it can have
no office or efficacy outside of the cause in which the need for its use
first appears. The probate proceeding before the Constitution had
its form of trial immemorially fixed and recognized. Then, as now,
its issues contained questions obviously of the kind which in actions
foreign to the probate proceeding would have belonged to a jury.
The issues of death, testamentary capacity, restraint, execution of the
will were all available subjects of controversy in some action in which
the jury trial was habitual if they pertained to land; but, even when
the privilege of jury trial was not guaranteed, save by the British
Constitution, it was contrary to the use and habit, whether English
or colonial, to have the probate issues, or any question which they
comprised, tried by jury. Such prerogative as then existed was ful-
filled and exhausted in its enjoyment when asserted in an action for
the possession of lands. It had no other place in the theory and pro-
cedure of those days. This was the essence of the proceeding when,

with all other forms of litigation, its mode of trial was crystallized by the Constitution in the outline and substance in which the Constitution found it. If this last sentence in section 2472a could be construed to mean that in a probate proceeding the heir or devisee must have a jury trial because he would have it in ejectment, then the provision would equally apply to any proceeding in the Surrogate's Court and to any question therein arising which would constitutionally be triable by a jury in any case appropriate to such trial. The result would be so disorderly and intolerable that it could not have been contemplated by the lawgivers and cannot be insinuated into the section, unless the language insists upon that meaning. Under such a construction, any party to the record would have the right to arrest a proceeding for administration where the fact of death was controverted, while the question was tried by jury in the Supreme Court, if the party making such demand were an heir at law and could present the proposition that the death would be a material question in his action for ejectment against a stranger.

The question of marriage and divorce of a person seeking administration as the spouse of the intestate would, under such construction, necessarily arrest the proceeding for administration, if the question were material in an ejectment action to which the parties to the probate might be parties. A petition to revoke letters upon accusations of misconduct toward the petitioner outside of the office held under the letters would be abated by a demand for jury trial, because the jury trial would be constitutionally available in an action between the same parties for damages resulting from the misconduct. It may be questioned, "What, then, is the scope of this provision, if it cannot be availed of for the trial of issues which, as essential ingredients of the probate proceeding, were anciently tried only before the court?" Among the issues which develop in experience there are some which cannot be separated from the essentials of the general issue, and which, as such, were therefore triable without a jury before the Constitution. To these, as argued supra, the Constitution promised no jury trial.

But another class of questions appear, in which the surrogate has been given a purely statutory jurisdiction which was not possessed when the last preceding Constitution was adopted. Obviously, as to these, the court cannot make a conclusive judgment, for both the statutes by which these powers were given and their exercise would offend the Constitution, if such judgment were sought to be interposed against the right of jury trial asserted elsewhere regarding the same question. So, in 1910, it was recognized that in proceedings to dispose of real estate for the payment of debts the surrogate, by earlier legislation, had been given authority to determine the existence and validity of debts, and it was apprehended that an unqualified use of such authority would usurp the right of trial by jury which belonged to both debtor and creditor. Section 2547 was therefore so amended that in the proceeding to sell real estate the constitutional right would be saved. Is it doubtful that the same impulse wrought the provision in section 2472a as to jury trials? Without it, there would be no es-

cape from the fear, if not the confession, that the Constitution would forbid or neutralize the exercise of the powers conferred in the first sentence of that section.

Purely statutory warrant for the trial without a jury of questions which under the Constitution were subject to the absolute right of jury trial would scarcely provide a bar to an action at law, unless such warrant involved the condition that the trial could only proceed if a jury trial were waived. Is it not clear, therefore, that the provision for jury trial, whether under section 2472a or section 2547, is to be confined to such questions as were never triable before the surrogate, until made so by statute, and that among those questions there is adequate range for all the usefulness which these sections were designed to fulfill? It would seem to be the opinion of the committee that the right of trial by jury to be invoked under section 2472a is necessarily dependent upon the existence of the immediate right in the proceeding involved, and that such right exists. The section under examination does not provide merely for the trial of controverted questions as to a will of real estate, and a construction that the only controversy to be regarded was the one which might arise with regard to real estate would doubtless be rejected by one who was addressing himself to the abolition of the trial under section 2653a in all cases relating to personal estate. The sacrosanctity of real estate has no place in the sentiment or in the material polity of American communities. The wealth of the state is largely in personalty, and no consensus could be found to justify a change in the Code which would give free right to the review by jury, if real estate were affected, and would deny the same boon to persons whose infinitely larger interests related to personalty alone.

The signers of the report must either be persuaded that section 2472a provides for a jury trial in probate both as to real and personal estate, or are devoted to the conviction that, in wills of personalty, no jury trial should be accorded. Between these alternatives, the second involving an affront to universal opinion, it can only be concluded that they have allowed themselves to believe that, under the last sentence of section 2472a, the right of trial by jury is unquestionably and absolutely available as to all issues involved in probate. Will it be claimed that the last Constitution found the trial by jury in use in the sort of cases which section 2653a brought into being and preserved its use in proceedings for probate? One sufficient answer is that a condition which did not exist could not have been preserved. The section did provide for the use of a jury in the case which it instituted, but in no other case. Jury trial was used in the kind of cases which the section created, but never by its influence was it used in the probate proceeding. Hence, in this proceeding the Constitution found nothing to "preserve."

Returning from an exploration, designedly prolonged in the hope that its results might give order and impetus to endeavors which prophesy great good for the bar and the people, the court remains persuaded that the statute has devolved no authority to award the subrogation for which the accountant prays. The state of the law herein

discussed has long been a by-word and a reproach. It is a nightmare through which the profession has for generations walked in its sleep. The need is for an enactment with apt and comprehensive provisions that all the issues in a probate proceeding, whether affecting real or personal estate, shall be tried by a jury, upon seasonable demand, and that such trial shall take place in the Surrogate's Court. This disposition should be made available, in the first instance, without any apparatus of removal to another court or other obstacles which would cloud the right or embarrass its enjoyment. Whatever might be borrowed from section 2653a of the Code to give convenience to the demand or scope, finality, and enforcement to the decree for or against probate should be appropriated. The absolute security of the constitutional privilege thus offered would be a bar in ejectment, if a judgment under the present section 2653a be conceded to be conclusive. The provision making the decree of probate conclusive against the heir at law would be relieved from constitutional infirmity.

Incidentally, there is no reason why, under the mechanism suggested, the decree in probate should not, by amendment of section 2625, be made conclusive against the defeated devisee as well as against the defeated heir; and there would then survive no occasion for the existence of section 2653a. The one necessary and all-embracing trial would be presided over by a magistrate sympathetically familiar with the law and its practical bearing, and the normal picture of a probate case begun and finished in a probate court, satisfying every instinct of order, efficiency, and justice and resulting in a comprehensive adjudication, might in time cover the memory of a broken and shameful system.

If a spirit of reaction, nurse of all these abuses, should cry for a trial in the Supreme Court, a fraction of the needed reform would be lost, but our condition, if not ideal, would at least become intelligible.

Decreed accordingly.