In the Matter of the Judicial Settlement of the Account of JACOB B. TOCH and FERDINAND R. MINRATH, as Executors of and Trustees under the Last Will and Testament of ROBERT F. AMEND, Deceased.

GERTRUDE L. AMEND, Appellant; CARL G. AMEND and Others, Respondents.

First Department, June 8, 1917.

Will construed — gift of stock of private corporation in trust for purpose of perpetuating family control — trust period limited to two lives — trust valid.

A will stated in substance that the testator and his brother owned the " controlling interest " in the stock of a business corporation, and that, whereas the testator and his brother had agreed, so long as they owned

such controlling interest, to hold and use the same for their mutual benefit and for the control of the corporation, and as they had agreed not to sell their holdings separately, except to one another, the testator directed his executors to reserve said stock which he gave to them in trust so long as his brother held the stock now owned by him, and directed the executors to vote on said stock in conjunction with said brother for the joint benefit of the estate, and not to sell or dispose of the shares except to said brother, or with his consent, unless or until the said brother should sell the stock now owned by him, subject to the prior termination of the reservation by the death of the testator's wife and daughter. By subsequent clauses the trust was to end on the death of the testator's wife and daughter, while the reservation as to the sale or disposition of the stock was to terminate upon the happening of either of two conditions, *first,* the sale by the testator's brother of his stock, and *second,* the death of the testator's wife and daughter, when the trust was to terminate and the proceeds be distributed.

*Held,* that the trust, being limited to the duration of two lives in being was valid.

As the clearly expressed intention of the testator, as shown by his will and other evidence, was to preserve the family control over the corporation, the stock of which was held only by members of the family, and which was in effect a " close corporation," the court will not read into said will, as a condition for the continuance of the trust, a requirement that at the testator's death his brother had not disposed of any stock held by him when the will was made, and hence it is immaterial that said brother transferred certain shares of his stock to his wife, or that the testator had also transferred stock to the same person for the purpose of protecting the same upon a threatened insolvency.

Nor did the provision of said will mean that the testator and his brother must own a majority of the stock of the corporation at the time of the testator's death, for the term " controlling interest " did not necessarily mean a majority holding, but merely a holding of sufficient stock to control the management of the corporation.

APPEAL by Gertrude L. Amend from a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 12th day of December, 1916, adjudging that the trust contained in the fourth paragraph of the will of said deceased is valid and effective and also directing the executors to transfer to themselves as trustees certain stock.

*Henry Siegrist,* for the appellant.

*Lee McCanliss,* for the respondents.

SHEARN, J.:

The testator and his brother Otto P. owned in May, 1913, when the will was executed, a controlling interest in the stock of Eimer & Amend, a corporation. The testimony shows that Eimer & Amend, of which the testator was a director and treasurer and his brother Otto P. a director and vice-president, was a close corporation; and its entire capital stock, 1,000 shares, was issued and outstanding at the time of the execution of the will. The Amend family, consisting of the testator, his brother Otto P., Elenore Amend, wife of Otto P., and Carl G. Amend, held together $635\frac{2}{3}$ shares, distributed as follows: Robert F. Amend, $315\frac{1}{3}$; Otto P. Amend, $140\frac{1}{3}$; Elenore Amend, 100; Carl G. Amend, 80 — the testator and Otto P. Amend holding together $455\frac{2}{3}$ shares. The Eimers held $320\frac{1}{3}$ shares. In October, 1909, the testator and Otto P. Amend entered into an agreement reciting their ownership of a large amount of the stock and their expectation to acquire a controlling interest in the corporation and providing that for the period of twenty years they would keep the management of the corporation in their joint control and refrain from selling their stock without first offering it to the other. At the time of the death of the testator, January 6, 1914, the holdings of stock were: Robert F. Amend, 150; Otto P. Amend, 20; Elenore Amend, $385\frac{2}{3}$; Carl Amend, 80; total, $635\frac{2}{3}$, which was the same total that these four held collectively at the date of the execution of the will. The Eimers held the same amount as at the execution of the will. The Amend family always voted its stock together and whatever changes took place in the ownership of the stock of the Amends were among themselves, none being sold to strangers. When the testator and his brother had become so heavily involved financially in certain business ventures that all the stock of Eimer & Amend owned by them was pledged as security for their debts and in imminent danger of being sold out, Elenore Amend, the wife of the testator's brother Otto P., came to their aid, and the testator, as shown by an agreement of October 3, 1913, sold to her 210 shares of his stock and she paid the debts secured thereby. Control of the corporation was thus kept in the Amend family and the testator continued to draw a yearly salary of $21,000.

The fourth paragraph of the will is as follows:

"*Fourth.* Whereas, I and my brother, Otto P. Amend, now own a controlling interest in the stock of Eimer & Amend; and, whereas, I will in all probability at the time of my death, in conjunction with my brother, Otto P. Amend, own a controlling interest in the said corporation of Eimer & Amend, or in the stock of said corporation; and whereas, I and my brother, Otto P. Amend have agreed, as long as we own such controlling interest in said stock, to hold and use the same for our mutual benefit and for the control of said corporation, and have agreed moreover not to sell our holdings separately, I herewith direct my Executors to reserve all of such stock, and I give the same to my Executors, in trust, nevertheless, to continue to hold such stock at such valuations as my said Executors and Trustees may deem proper so long as my brother Otto P. Amend may hold all of the stock now held by him, and to vote thereon in conjunction with my brother Otto P. Amend, or his legal representatives, for the joint benefit of my brother and my estate, and not to sell or dispose of such shares except to my brother or with his consent, unless and until my said brother shall sell and dispose of the stock now owned by him, and subject to the prior termination of this reservation by the prior death of my wife and my daughter; to pay one-half the income of said fund, from time to time, to my wife for the period of her life, and after her death, (if my daughter be then living) to my daughter for the period of her life, to pay the other half of such income to my daughter for the period of her life, and if she dies before my wife leaving descendants, then to pay the said one-half of the income to her children and the descendants of any deceased child *per stirpes* for the period of the life of my wife, and if she dies before my wife without issue, to pay such entire income to my wife for life, and upon the death of both my wife and my daughter then to sell such stock (preferably to my brother, Otto P. Amend) and to divide the principal of such trust, and all undistributed income thereon, between the then living children of my daughter, and the issue of any deceased child or children of my daughter, *per stirpes*, and in case of the death of my daughter without issue, I give such trust fund, or the proceeds thereof, after the termination of said

two life estates, to my brother Otto P. Amend, if living, and, if dead, to his children, and the issue of any deceased child or children of his *per stirpes*."

The fact that the testator and his brother Otto P. prior to the testator's death had transferred the bulk of their holdings to the wife of Otto P. is made the basis of an attack upon the validity and effectiveness of this trust, the contention being that there should be read into it a condition unexpressed that the trust only became effective in the event (1) that at the time of the testator's death his brother Otto P. had not disposed of any of the stock held by him when the testator made his will, and (2) in the event that the testator and his brother owned at the time of testator's death a controlling interest in the stock of the company. The trust is a perfectly valid one and is clearly expressed. The testator gives whatever Eimer & Amend stock he may have at the time of his death to his executors in trust for his wife and daughter for their lives with remainder over to his daughter's children, if any, and if none, to his brother, or, if dead, to his children. The trust " res " is specified. It is to be held for two lives in being. The trustees are designated, and the trust is a lawful one. The testator specifically makes clear his wish and intention that the Eimer & Amend stock owned by him at the time of his death be " reserved," or, as he explains, held in specie so long as his trustees and his brother own a controlling interest. It is quite apparent that for all practical purposes the control of the corporation in the hands of the testator and his brother Otto P. was just as effective when the bulk of their holdings was transferred to the wife of one of them as it was before. There is no suggestion of any disagreement between the wife and her husband or between the wife and her brother-in-law, and the fact that the testator continued to draw his salary of $21,000 a year after the transfer is significant as indicating that the control of the corporation after the transfer was for all practical purposes where it was before. The same reason that impelled the testator and his brother to agree in 1909 *not to* sell their stock without offering it first to the other applied in full force after lodging the bulk of their stock in the hands of Otto's wife. The plain purpose of it all was to preserve the predominating influence of the Amend family

in this family corporation. To read into this trust the unexpressed condition that it was only to become effective in the event that on the death of the testator Otto P. Amend held all of the shares that he held when the will was made, and that the transfer of some of his shares to his wife, without disturbing the control, rendered the trust ineffective, would run counter to the scheme and intention of the will, which was to carry out in good faith, so far as could be legally done, the original agreement of 1909, which in turn has for its purpose the preservation of the Amend family control in the company. There are no conditions, either precedent or subsequent, expressed in this paragraph of the will, and not only are courts loath to read unexpressed conditions into grants or devises, but to do so in this case would make a new will and frustrate the testator's clearly expressed purpose.

It is also claimed that the trust is ineffective because the testator and his brother did not own a majority of the 1,000 shares of the stock of the company either at the time the will was made or at the time of the testator's death, and, therefore, they did not have a controlling interest. It is well understood that a controlling interest in a corporation may be less than a bare majority. If the testator had meant majority he would probably have used that expression, but when it is considered that he knew just how many shares both he and his brother held when he made the will, and that this number was sufficient to enable them, as a practical matter, to control the corporation, it is quite apparent that the expression " controlling interest " was employed in the ordinary sense and not to describe a state of facts contrary to what the testator knew them to be.

A careful reading of the fourth paragraph further shows that the testator distinguished between the *trust* that he created and the *reservation* that the trustees were to make of the stock. There is only one provision for terminating the trust, *i. e.*, the death of the testator's wife and daughter. There are two provisions for terminating the reservation of the stock — *first*, the sale by the testator's brother of his stock, and *second*, the death of the testator's wife and daughter, when the trust is to terminate and the stock is to be sold.

The decree of the surrogate should be affirmed, with costs to the respondents payable out of the estate.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concurred.

Decree affirmed, with costs to respondents payable out of the estate.