Slater, S.
This opinion will deal with two separate proceedings. One is a proceeding for the construction of the will of William Allen, deceased. Code Civ. Pro. § 2615. The other proceeding relates to the account of the trustees of said estate. The conclusions herein will answer the requests of the executors and trustees to construe the will, and will also dispose of the objections filed by the next of kin to the account of the trustees.
There have been two prior intermediate judicial settlements of accounts of the executors and trustees. The testator died October 18,1914, leaving a will dated August 9, 1905, and a codicil thereto dated January 23, 1914. He left him surviving Annie B. Allen, his widow, and Isabella M. Capstick, a niece, his only heir at law and next of kin. Mrs. Capstick has since died, her interest passing to a daughter. The will was admitted to probate December 18, 1914, and letters testamentary issued to Annie B. Allen, Milo J. White, Mount Vernon Trust Company, Harry J. Carr and Herman Thompson. After this long lapse of time, the executors and trustees now seek a construe *97 tion of this bungling and slovenly script which has harassed the lawyers and distracted the court.
The next of kin assert that the will is wholly void, that the testator died intestate, and that the estate passed to the widow and to the next of kin. The widow contends that the trusts are valid and that paragraph 12 of the will creates an absolute gift to her of a stated sum of money for her support and maintenance, to be fixed according to the tables of mortality. The rector, church wardens and vestrymen of Trinity Episcopal Church of Mount Vernon claim as residuary legatee under the laws of charitable uses, trusts and donations. The attorney-general supports the claim of the church. The executors and trustees primarily defend the will as a whole.
The paragraphs of the- will and codicil may be briefly stated: The household effects are given to the widow (the home plot always being owned by the widow). A legacy of $250 is given to the niece, the only next of kin. The 6th and 7th paragraphs of the will are inoperative, as the testator "had disposed of the property named therein during his lifetime. In these paragraphs the testator had given the income from certain real and personal estate to his widow for her life for her support and maintenance. The 8th paragraph of the will bequeathed the entire shares of the capital stock of the corporation known as William Allen & Company to the executors in trust, and the 9th, 10th, 11th and 15th paragraphs of the will, and the 3d paragraph in part of the codicil, further relate thereto. The 12th paragraph, claimed by the widow to give her a fixed sum of money, is as follows: “I direct my Executors to pay unto my beloved wife, Annie B. Allen, in addition to the amounts herein provided for, such a sum as my said Executors in the exercise of their discretion shall *98 deem necessary for the proper maintenance and support of my said wife, Annie B. Allen, during the term of her natural life.” Upon the death of Annie B. Allen, the widow, the executors are directed to pay an annuity to a maid servant, if in the employ of Mrs. Allen at the time of her decease. Under the 3d paragraph of the codicil, the rest, residue and remainder of the estate, and the “ income, interest and profits thereof ” are given to the executors in trust: To invest the residuary estate and, from the net income, pay to the Trinity Episcopal Church of Mount Vernon and the Men’s Club of Trinity Parish, which is an organization of the Trinity Episcopal Church aforesaid, certain stated sums for a certain stated period of years. The interest and profits which may accrue in excess of the specific sums paid to said church and to said men’s club shall be set apart to be invested. The “ interest, income and profits ” which may remain, after the payments hereinbefore specified, shall be paid to Eva B. Graham, a stepdaughter, the child of Annie B. Allen, during her life. Upon her death the “ interest, income and profits ” revert to the residuary estate. And further, upon the death of Eva B. Graham, the executors are directed to pay the profits from the residuary estate to William Allen & Company, a corporation, upon certain conditions. Immediately following is the' residuary gift in these words: “ In the event of the sale of William Allen and Company, or liquidation thereof, whereby it ceases to be a going concern, or ceased to do business in the stationery trade in New York City, I direct the said income from my residuary estate to be paid to Trinity Episcopal Church of Mount Vernon, New York, of which Rev. W. H. Owen, Jr., is at this time Rector.”
The estate consists of personal property. The par *99 value of the capital stock of William Allen & Company is $10,000; it was appraised at $25,000. The remainder of the estate is valued at approximately $75,000.
The will was construed by a former surrogate. Upon appeal, the decree of the surrogate was reversed and the case remitted to this court for determination upon such facts as may be adduced on a new trial. Matter of Allen, 188 App. Div. 867.
The will has been inartfully and unskillfully written, rendering the intent and meaning of the testator obscure, vague and uncertain. The testator’s intention is made ambiguous by inappropriate and useless verbiage. This should be kept clearly in mind. Its uncertainty of expression and doubtful meaning does not absolve this court from the duty of interpreting it, unless it is so vague and so indefinite as to render the purpose and meaning incomprehensible. Only when all the established rules of law for the construction of wills have been applied in vain, may the court reject the instrument as impossible of construction. Morton v. Woodbury, 153 N. Y. 243. We will endeavor to discover, from the contents of the instrument, the intention of its author. The unskillfulness of the draftsman should make us more astute in our search to comprehend the intention of the testator. Bach will must be read and construed with reference to its own peculiar provisions. The will and codicil are to be taken and construed as parts of one and the same instrument. Herzog v. Title Guarantee & Trust Co., 177 N. Y. 86.
It is a settled rule of construction that where a will is susceptible of construction by which there may be a testamentary disposition of the entire estate, that construction will be given. Matter of Goldmark, 186 App. Div. 447; Cammann v. Bailey, 210 N. Y. 19; Matter of Ossman v. Von Roemer, 221 id. 381.
*100 The rule is also established where a will is susceptible to more than one construction, that one which will render it valid will be preferred because it is presumed to accord with the actual intention. Seitz v. Faversham, 205 N. Y. 197; Matter of MacDowell, 217 id. 454.
This principle is applied more strictly in favor of gifts to charity upon the theory that charities are favored in the law. Buell v. Gardner, 83 Misc. Rep. 513; Matter of Robinson, 203 N. Y. 380.
The trend of judicial decisions has been to sustain gifts for charitable purposes. Matter of Cunningham, 206 N. Y. 601; Butterworth v. Keeler, 219 id. 446; Matter of Groot, 173 App. Div. 436; affd., 226 N. Y. 576.
Provisions for the benefit of a wife should be construed liberally in her favor. Moffett v. Elmendorf, 152 N. Y. 475. Testamentary provisions for support are favored by law. Collister v. Fassitt, 7 App. Div. 20; affd., 163 N. Y. 281. The law favors vesting of remainders. Matter of Brown, 154 N. Y. 313.
Buies for the construction of wills are for the sole purpose of ascertaining the intention of the testator, and if the intention is clear and manifest, it must control regardless of all rules that have been formed for the purpose of determining their construction (Cammann v. Bailey, supra), and such rules are not hard and fast rules like rules of property to be applied rigidly in every case. Fulton Trust Co. v. Phillips, 218 N. Y. 573.
Lord Hobart, in Malverer v. Redshaw, 1 Mod. 35; 86 Reprint, 712, said: “A judge is not to be, like a tyrant, making all void when part is void; but like a nursing father, making void only that part where the fault is and preserving the rest if he can.”
In construing a will, a full knowledge of the facts and circumstances surrounding the testator and the *101 making of the will is necessary. The relation that the testator bore to his family, the scheme of his disposition, the nature and extent of his property, and his knowledge thereof. Ely v. Ely, 163 App. Div. 320; affd., 219 N. Y. 112.
The matter to be determined in the construction of a will is, what did the testator intend at the time of its execution? And when that intention is ascertained, it must have effect, if not in conflict with any law.
The testator had specifically and firmly in mind to provide for his wife, Annie B. Allen, now seventy-five years old, a person of about his own age, to whom he had been married for many years, and further to keep, as a going concern, the successful business which he had created and was conducting in New York city under the name of William Allen & Company, a corporation, at least during her lifetime. The gift to his only heir and next of kin was $250. He evidently was not heedful for his kinsfolk. He did not know the married name of his niece. There is no other reference in the will to her and there is no room for inference that he intended to leave the remainder of his estate undisposed of.
The scheme of the will is simple enough, and evidences the solicitation that he had for his wife. The expressed intention, as written in the will by the testator, was for the wife and her maintenance. He gave her the income of his real estate. He gave her the income of a $5,000 life insurance. It is true he disposed of these two assets in his lifetime. He gave her the income upon the value of the stock of the business when sold, and, before its sale, he gave her one-half of the profits earned by the shares of stock, and then, in addition, gave ample discretion to the trustees to pay any amount from the corpus of the *102 estate for her proper support and maintenance. Her share in the profits of the business has amounted to at least $7,500 or more per annum. The income upon an amount realized from the sale of the business would not exceed $1,500 per annum. The 12th clause, therefore, made open way for the exercise of the prudent discretion of the executors to advance to the widow various amounts of money from the corpus of the estate for her proper support and maintenance. Just so long as the business continues, certain men, in the employ of the concern for many years, will control the activity and success of the business and they are given part of the profits of the business. These men are still in the employ of the corporation. Certainly, a sagacious move and a praiseworthy thing to do on the part of the testator. The principle of profitsharings now being indulged in to cause labor and capital to become more closely allied, had been well thought out by William Allen. Upon Mrs. Allen’s death, the stepdaughter becomes the beneficiary of the entire estate, subject to certain charges in favor of a maid servant and in favor of the Men’s Club of Trinity Parish of Mount Vernon and of Trinity Church itself, with ultimate remainder of the entire estate to Trinity Episcopal Church, to which religious body testator belonged. I think this is a fair statement as to what he intended to do with his property. Because of the very inartificial framing of the will, did the testator bring his intentions for the disposition of his property within the law of the state of New York?
The first, and one of the most important questions to be determined relates to the validity of the trust created by the will and codicil dealing with the shares of the stock in William Allen & Company, a corporation, which was owned in its entirety by the testator.
*103 Is the trust under the 8th paragraph of the will for the widow, and subsequently for Eva B. Graham, and the provision for the widow, under paragraph 12 of the will, and the gift over to the ultimate remaindermen independent and separable? In my opinion, these provisions are clearly separable and distinct. They are independent of each other. Kennedy v. Hoy, 105 N. Y. 134; Van Schuyver v. Mulford, 59 id. 426; Greer v. Chester, 17 N. Y. Supp. 238. They do not fall within the ruling in Central Trust Co. v. Egleston, 185 N. Y. 23. If the entire 8th paragraph is held void, the 12th paragraph would operate to provide amply and fully for the widow as a separate provision for her. Davis v. MacMahon, 161 App. Div. 458; affd., 214 N. Y. 614.
The trust under the 8th paragraph is of the shares of the capital stock of a corporation, a portion of the estate only, limited upon the measuring lives of the widow and the stepdaughter, Eva B. Graham, with a vested remainder in the Trinity Episcopal Church of Mount Vernon.
A future estate is vested when there is a person in being who would have an immediate right to the possession of the property on the determination of all the intermediate or precedent estates. Real Prop. Law, § 40. There is no distinction between remainder interests in personal and real property. And, too, a vested gift, otherwise valid, will not fail merely because it is limited to take effect at the expiration of a trust which is void under the Statute of Perpetuities. Real Prop. Law, § 42; Pers. Prop. Law, § 11.
The 8th paragraph directs the trustees to continue the business of the testator as they may deem expedient, and also confers upon the trustees the power to sell and dispose of said business in their discretion. It is contended by the next of kin that this is a void *104 trust created for the purpose of maintaining William Allen & Company in business as long as it should be profitable, necessarily suspending the power of alienation beyond the term provided by law. Pers. Prop. Law, § 11.
A testator may suspend the power of alienation of personal property for a period of two selected lives in being at the creation of the estate. During that time he may make such distribution of the annual income thereof among as many persons as he sees fit, provided the whole term must end with the death of the survivor of the two lives. Phelps v. Pond, 23 N. Y. 69, 81; Underwood v. Curtis, 127 id. 523; Schermerhorn v. Cotting, 131 id. 48; Ripley v. Guaranty Trust Co., 165 App. Div. 481.
A trust estate is composed of three component parts: trust property, in this case the shares of stock of the corporation of William Allen & Company; trust objects, here the primary object being the wife and the secondary object the stepdaughter; trust term, measured by the lives of the widow and the stepdaughter. These two lives are the yard stick measuring the legal trust.
In the 8th paragraph and subsequent paragraphs connected therewith, and in the codicil, the testator is made to frequently use the words, “ I direct my Executors,” etc. In Matter of Lynch, 102 Misc. Rep. 650, Surrogate Ketcham found it neccessary to hold that the word “ direct,” used to give authority to the executors, was merely precatory, and said: “ A construction that the direction is precatory only should be preferred to any process which would invalidate the testamentary purpose.” In a case in which it was sought to impose a trust upon words susceptible of a precatory meaning, it was said: ‘‘Where to impose such a trust would be to nullify previous expressions *105 in the will and to create a repugnancy between its different parts, then the rules of construction forbid the attempt.” Clay v. Wood, 153 N. Y. 134, 142.
The direction to carry on the business is limited by the discretion to sell the business. While the business is being continued, the will directs that the profits upon fifty-two shares of stock shall be paid to the widow and the profits upon forty-four shares of the stock to certain named employees, if in the employ of the business at testator’s death, and in the further event of their continued employment. These provisions for employees create a gift of the profits of the trust property and, of course, cease according to the non-employment as expressed in the provisions of the codicil, or cease upon a sale of the business by the executors and trustees, and finally cease upon the death of the surviving measuring life. In the will these gifts are spoken of as “in addition to their present salaries.” This clause is omitted from the codicil. These gifts may be denominated as legacies, or additional salary, or as successive payments of sums in gross, and they are releasable and assignable, and do not occasion suspension. Cochrane v. Schell, 140 N. Y. 516, 531-535. They are not in the nature of an annuity creating a trust. No specific sum is set. The gift varies with the profits upon the shares of the stock. It may be great, or small, or none each year. Davis v. MacMahon, supra. The provisions for employees are not technical trusts, and the interest of the employee is not inalienable. The testator lacked clarity of thought respecting his own relations to the business and property of William Allen & Company, but he was not confused as to facts and his substantive intentions are clearly expressed. He recognized that the corporation existed and clearly intended it to continue to operate the business. Beyond that, as was not un *106 natural under the circumstances, his mind went directly to matters of management and control, conducted and exercised as he doubtless was accustomed to do, without much attention to the technicalities of corporate ownership or the formalities of corporate action. He knew what he wanted, and thought of it as being done, not as the books say it should be done, not as it must have been done had the. stock been widely held, but simply and directly as he would have done it in his lifetime. Therefore, instead of directing that his executors vote for, or consent to certain things, he directs them to do certain things as though he, William Allen, in his individual capacity owned and operated the business without the intervention of a corporation.
There being nothing illegal in his purpose, and nothing which could not be lawfully brought about by the executors through their stock control, there is nothing fatal or consequential in his oversight of any of the legal essentials of corporate action, or of the machinery essential to connect his intentions with the management of the corporate business and the disposition of the corporate property. If his executors chose to follow in his footsteps and run the business, employ and pay the force, and divide the profits by direct action, there would be none who could complain, if creditors were provided for. If, on the other hand, the executors preferred to be scrupulous as to forms, they could elect as directors either themselves or others who, under their direction, would carry out the testa-tor’s plans. If an exigency should arise such, for instance, as obstinacy on the part of the directors, the' will of the testator could and must be enforced and accomplished by the executors by resort to their voting power ■ as stockholders. Therefore, whenever due regard for legal forms of procedure requires it, the directions of the testator must be considered not as *107 attempted testamentary dispositions of Ms own property, but as directions annexed to the testamentary disposition of the stock, respecting the exercise of the power to vote or consent, or to call directors to account, which follows the stock.
It was the testator’s purpose that the business should be continued during the discretion of the executors and should be sold or otherwise liquidated at the will of the executors; that the accounts of the business should be audited periodically by a public accountant; that each year’s profits should be held in the corporation for a full year before being divided; that, subject to that restriction, all profits should be divided. It was also his purpose that each of the employees mentioned in his will should be retained, or discharged by the corporation at the will of his executors. It cannot be conceived that he intended that a man whom his executors considered unfit or desired for any reason to discharge, should, at the will of a board of directors, continue to receive benefit under the will. None of these things could, in strict law, be done by direct action. Any board of directors having interest and courage to obstruct any of them or pursue a different line of action could make it necessary for the executors to resort to the voting power. As matter of law, therefore, it is on the voting power that, in the last analysis, the ability of the executors to carry out each of these instructions rests. Therefore none of them, in legal effect, can be a testamentary disposition of property. Each of them is, and must be ultimately, effectual only as an instruction to executors respecting the exercise of powers incidental to the ownership of the stock bequeathed. Hughes v. Hiscox, 105 Misc. Rep. 521; 110 id. 141. Each of them is of the same legal nature precisely as would be a provision that the executors vote for, or consent to a merger, consolidation or increase or decrease of stock.
*108 It is clear that the provision for the employees was directed to the benefit of the estate, not to the protection of the employee. It was the services of these men that gave to the corporation its large returns on small capital investment. It was to keep these services that these men were provided for. The provision was pay for services to be rendered to the corporation. It was to arise out of the fruits of those services. It was to cease when those services ceased. The executors could discharge or cause the discharge of any of them with or without reason at any moment. It was pay, pure and simple.
I, therefore, can see no difficulty in treating this provision for payment to employees as of precisely the same legal nature as the provision that they should be employed by the corporation during the pleasure of the executors, and discharged by the corporation at the pleasure of the executors; that is to say, not as a testamentary disposition of the testator’s own property, or of dividends that should be declared to his executors on the stock, but as a direction to the executors to so use the control of the corporation through voting power as to cause the corporation to employ these men on a profit-sharing basis. That is the substance of the intent and it does not run counter to any of the testator’s direct expressions. He did not mention dividends. He did not direct his executors to collect or receive the income from the stock. It is true that he directs them to “ pay ” these profits to these employees, but he also speaks of his executors as ' ‘ paying for all merchandise and all other indebtedness of the said corporation.” Evidently he had no idea of any different mechanics, or different legal effect in the one case than in the other. Finally, he speaks of “ allotments ” to be credited ” and retained in the corporation for an interval, and then paid. Here it *109 seems to me we get a direct glimpse of the mental picture that these shares of profits should be allotted to the employees by the corporation, credited to the employees on the books of the corporation, and paid to them directly by the corporation.
The testator has not expressly said that this provision for employees is first to be paid over as dividends to the executors and then to be distributed by them as trustees. On the contrary, so far as I can discover at all his mental picture, it seems rather that he conceived that these payments should be made directly out of the funds of the corporation by the executors as managers of the business of the corporation, or procured to be so paid through the exercise of voting control.
Of course this theory can have no application to the payments to the wife, and if it be applied to the case of payments to employees, it involves drawing a distinction in legal effect between the provision for the wife and the provisions for the employees where there is no difference in language, but it seems to me that offers no obstacle. It is certain that the language cannot be applied directly to the subject matter to determine the method. It must be supplemented by applying the clearly defined substantive intent to the subject matter to be operated upon.
The testator has expressed no other or different intent than if he had said: “ I give my stock to my executors. I want each of the employees, so long as he is continued in associate employment, to receive, in addition to his salary, a share in the profits of the business. I want my wife to receive the rest of the profits of the business. ’ ’ If that had been the language, it seems to me that the court could not have hesitated to hold that the provision for the employees was intended to be and take effect as a mere direction to be *110 observed in the management of the business and the provision for the wife was intended and took effect as a trust.
If this reasoning is correct, it follows that the provisions for the employees were not testamentary dispositions resulting in trusts, but mere directions or authorizations to the executors respecting their con-' duct in the management of the business, either directly or through stock control. He was not disposing of his own property, but merely directing the executors as to what he wanted done with property of the corporation. Hence they were not trusts.
Even if we must consider and interpret these provisions as though they were all intended to operate directly on the business; even if we must exclude from consideration the thought that the directions must operate simply as instructions respecting exercise of voting power, the result seems to me to be the same. The intent was that the employees should get páy for work to be done so long as they continued to do the work or were wanted to do the work, and no longer. I see no reasonable ground for distinguishing this from any other case in which a testator,.in leaving his business to his executors to be carried on by them, should see fit to recommend and authorize them to retain certain employees on a specified salary or a profit-sharing basis. I cannot see how such a provision savors of a technical trust, or has any of the features essential to a technical trust.
Broadly speaking, it is an insuperable obstacle to treating these provisions as creating a trust that they do not bestow on the employee anything of which he cannot bar himself, or anything that the executors are bound to give him any longer than they see fit, or create a provision which the executors and employee cannot alter by mutual consent. The employee is free *111 to resign and thus terminate Ms interest. The executors are free to discharge him and thus terminate his interest. If he resign, or the executors discharge him, he can be re-employed on any terms that may be agreed upon. Other beneficiaries might object if the executors took him back on a profit-sharing basis or otherwise at too large a salary, or hold the executors accountable if, by wanton discharge of a necessary employee, they wrought injury to the estate; but, as between executors and employee, no question could arise. It follows that, without going through the form of resignation or discharge and re-engagement, the profit-sharing scheme could be done away with by mutual consent between the executors and employee at any time.
If the employee, fearing lean years, demanded, under threat of resignation, the substitution of a flat increase in salary for the profit-sharing, would he thereafter, if the profits exceeded his expectations, be heard in repudiation of his bargain, to say that his interest in profits was inalienable? If, on the other hand, the executors, anticipating heavy profits, were, under threat of discharge, to compel the employee to accept a flat sum in lieu of profits, would they thereafter, if profits were small, be heard to say that the bargain was void as in contravention of the trust? That which was given as compensation, of which the one party can say : “ I am not satisfied: I withdraw unless I get something different or more,” of which the other party can say: “I will no longer pay; you are discharged unless you accept something less,” lacks every essential feature of a trust provision. It sounds altogether in contract. A will cannot be termed a contract. Brearley School v. Ward, 201 N. Y. 358.
Hence these provisions of the will for employees can have no other force or legal effect than a warrant *112 to the executors to contract, or to sanction contracts, with employees on a profit-sharing basis up to a specified limit.
Even if the provisions for employees are technical trusts, they do not suspend or contribute to the suspension of the absolute ownership. The test of the suspension of absolute ownership pf personalty is the same as the test of the power of alienation of realty. The ownership is suspended only so long as there are no. persons in being who can by their joint act confer an absolute title to the personalty and to the proceeds of its sale or disposition. The validity of a suspension of the absolute ownership, or of the power of alienation does not depend on the number of lives of beneficiaries that may run their course while the suspension lasts, but only upon the number of lives by which the duration of the suspension is measured.
So also mere administrative provisions, though they may operate to suspend indefinitely in the discretion of a trustee the actual possession by the ultimate absolute owner, do not invalidate the disposition if the ultimate absolute ownership be so limited that it must vest within the statutory period. I may even interpose beneficial interests to endure until the administrative provision is performed, so long as I do not give to those beneficiaries a right to demand or enforce its postponement. Thus I may authorize my executors to sell my real estate whenever in their discretion they see fit, and until sale to lease it and pay the rents to as many beneficiaries in succession as I please, and to pay the proceeds of sale to A and B or to the survivor of them, or to the issue of the survivor living at his death. Robert v. Corning, 89 N. Y. 225. Here the provision would be good for the reason that the power of sale may be exercised at any *113 time that the trustee so wills and the ownership of the fund to arise from the sale must vest absolutely not later than the death of the survivor A and B.
So in the instant case, even if we admit that the executors can continue the business indefinitely without relation to lives, and can continue during that time to pay profits to the employees; or even that they can continue the business for the sole purpose of paying profits to the employees, neither that power nor the accompanying interest of employees suspends the absolute ownership. The executors may, in their uncontrolled volition, terminate the interest of any employee by dicharging him or terminate the interest of all by winding up the business. Therefore if and whenever the absolute ownership of the proceeds to arise from liquidation or sale of the business becomes fixed, the executors and such absolute owners can at any moment unite to absolutely dispose of and transfer the business and its proceeds.
■If we regard the lives of the wife and stepdaughter as the measuring ones, we can apply the rule stated in Schermerhorn v. Cotting, supra; Smith v. Havens Relief Fund Society, 44 Misc. Rep. 594; affd., 190 N. Y. 557; Chapl. Susp. Alien. § 233.
Paragraph 9 reflects to some degree the intention of the testator as to the time when the business should be sold and that period is within the measuring life of the wife. This paragraph empowers the executors to loan money to William Allen & Company “ for a period not longer than the natural life of my beloved wife.” It is quite clear that the testator had in mind the large yearly profits amounting to about $20,000 per annum, earned in the business, and that if it was continued for the life of the widow, the discretion given under paragraph 12 would possibly not have to be exercised and, if at all, only in some measure. *114 After her death, the testator had no great care for those who took as beneficiaries. Again, the 15th clause reflects possibly his intention as to the duration of the business. Upon the death of the wife, the executors are directed to sell thirty-two of the fifty-two shares of stock held in trust for her, and the money therefrom is to revert to his residuary estate. The other twenty shares, being part of the fifty-two shares held in trust for the widow, falls into the residuary estate by the terms of the 3d clause of the codicil. When he directed the sale of the thirty-two shares did he not mean a break-up of the business? His duty to a wife and widow had been met and fully performed.
I know of no rule of law that prohibits a testator from directing the continuation of his going business and making it a part of a trust estate provided it is not used as the measure of the life of the trust. In Matter of Froehlich, 122 App. Div. 440; affd., 192 N. Y. 566, a trust was created for the life of the wife and upon the further trust to continue the business until the youngest child shall arrive at the age of twenty-one years, or as long as the net profits of said business shall yield ten per cent upon an investment of $50,000. The court said: “We think the fair construction of this clause made it the duty of the trustees to. close out the business when it became apparent that the business would not earn the ten per cent profits specified. At the same time reasonable latitude should be allowed the trustees in determining whether or not the business was capable of making the ten per cent profit anticipated.”
In Matter of Jones, 103 N. Y. 621, a direction was given to carry on the business, being part of the trust property. The court said: " The provision under the will authorizing the executors to discontinue the *115 business when it was no longer advantageous to continue it, bears strong indication of the intention of the testator that when the body of the estate fails to yield a sufficient income * * * then the occasion arrived as mentioned in the will when it became the duty of the executors to discontinue the business.”
In Costello v. Costello, 209 N. Y. 252, the will created a trust of the rest, residue and remainder of the property (which included the business of the testator), for a son for life, with remainder to the son’s children, and made the following direction as to the business: “ But I order and direct that part of my estate as shall be in the business of P. C. Costello & Company shall be allowed to so remain by the trustees so long as they [the trustees] think fit.”
In Matter of Toch, 178 App. Div. 544, the stock of the testator and that of a brother controlled the business and the will gave the stock to the executors, in trust for the widow, with direction to hold “ so long as my brother may hold all the stock now held by him.” The court said: “ The testator distinguished between the trust that he created and the reservation that the trustees were to make of the stock.” Matter of Rumsey, 18 N. Y. Supp. 402; Willis v. Sharp, 113 N. Y. 586; Manhattan Oil Company v. Gill, 118 App. Div. 17. The question of these trusts being void because they were trusts to continue a business was not even raised.
The shares of stock of William Allen & Company are trust property. The corporation, and not the trustees under the will, would make the income. Justice Cullen, in Matter of Rogers, 22 App. Div. 428, 437; affd., 161 N. Y. 108, said: “ Technically, though also legally, the specific thing which is the subject of the trust is not an interest in the property of the corporation, but in the shares of the corporation.” The *116 profits produced by the shares of the stock of the corporation are to be treated as income. Matter of Slocum, 169 N. Y. 153; Matter of McCollum, 80 App. Div. 362.
In Thorn v. DeBreteuil, 179 N. Y. 64, the will created a trust for the wife and children. The executors were directed to carry on the business engaged in by the testator. The court, by Judge Gray, said: ‘‘ Such an accumulation * * * was planned * * * not upon the theory that his extensive business was to be maintained thereby; but because his children would not require * • * * all of the income. ‘ The paramount consideration, ’ as it is said by Mr. Justice Jenks, when he wrote in this case (86 App. Div. 405), * was the provision for his children, not the maintenance of the business.’ * * * A testator may, competently, direct that his business shall be carried on; but such a direction, simpliciter, will be construed as an authority to carry it on with the funds already invested in it, at the time of his death.” Willis v. Sharp, supra.
The contention of the next of kin that the trust under the 8th paragraph is void because it was for the purpose of keeping William Allen & Company in business as long as it should be profitable is untenable. Steinway v. Steinway, 163 N. Y. 183. The trust is limited and measured by the lives of Annie B. Allen and Eva B. Graham. The measure of suspension is strictly the two lives of the wife and Eva B. Graham. The provision for employees is a mere subsidiary provision terminable at any time, so that if absolute ownership vested on the death of the wife and Eva B. Graham, the provisions for the employees would impose no obstacle to the absolute alienation of the stock or the business. The provision in the instant case is not *117 similar to the facts of, nor does it fall within the ruling of Hagemeyer v. Saulpaugh, 97 App. Div. 535, cited in Matter of Berry, 154 id. 509, and Davis v. MacMahon, supra. The estate is limited so that, in every possible contingency, it will absolutely terminate at the death of the survivor of the two life tenants as required in Matter of Wilcox, 194 N. Y. 288. If an appellate court should disagree with this conclusion, I assume the principle of rescuing a portion of a trust so well developed (Matter of Colegrove, 221 N. Y. 455) would be applied. Matter of Zimmerman, 104 Misc. Rep. 699; affd., 183 App. Div. 939; Matter of Thaw, 182 id. 368.
The widow contends that paragraph 12 of the will is a separate paragraph, with a separate idea back of it, and is meant to authorize the executors to give a set sum of money in gross, absolutely, to the widow for her proper support and maintenance “ in addition ” to any other provision in the will for her. It is claimed that the mortality tables should be used in ascertaining the amount due her, and that the amount would be about $70,000. I cannot accede to this. This is making too free with the direction of the will. If the testator had intended to give the major part of his estate to the widow absolutely, after providing for her in paragraph 8, he would have said so in simple, direct and clear language. In my opinion, paragraph 12 creates a power in trust (Real Prop. Law, § 137) of which the executors are the trustees of the power. The provisions of the Real Property Law apply equally to the creation of powers dealing with personal property. Cutting v. Cutting, 86 N. Y. 522.
In Steinway v. Steinway, supra, the Court of Appeals said: '‘ The court will construe any authority and duty conferred or imposed upon executors, where it is possible to do so, as a mere power in trust, *118 although the duty imposed, or the authority conferred, may require that the executors shall have control, possession and actual management of the estate.”
The mere omission to name executors as trustees, or to use formal words to clothe them with the power of trustees is not controlling. “ The scheme of the testator is the touch-stone,” says Justice Jenks in Thorn v. DeBreteuil, 86 App. Div. 405, 423; affd., 179 N. Y. 64; Matter of Griffin, 167 id. 71; Central Trust Co. v. Egleston, 185 id. 23.
The testator created this power in trust to he “ in addition ” to what he had theretofore given to the widow, arming the trustees with discretion to pay from the corpus of the estate such a sum as they may deem necessary from year to year, for her proper support and maintenance during her natural life. He intended to have his widow live in the same station in life as she did when he was living. He intended to be liberal with her. The only other effective provision for her was the trust of the stock in the business. The words “ during the term of her natural life ” create a limitation as to the duration of the enjoyment of the gift, therefore it does not fall within the decisions of Hatch v. Bassett, 52 N. Y. 359, 362; Matter of Dibble, 76 Misc. Rep. 413; Matter of Ingersoll, 95 App. Div. 211; Matter of Goldmark, 186 id. 447, vesting the corpus of a gift in the beneficiary. Such a limitation is inconsistent with absolute ownership.
The next of kin have attacked the exercise of the use of the discretion granted in paragraph 12. It is also claimed that the property of the widow must first aid in her support. The executors, on September 8, 1915, and January 16, 1917, filed their intermediate accounts. Decrees followed dated October 8, 1915, and March 16, 1917. All parties interested were before the court upon the final accounting. The next *119 of kin was not cited upon the second intermediate accounting. These decrees approve the accounts, showing payments to the widow of her part of the earnings upon fifty-two shares of the stock, amounting to $5,200, and payments under paragraph 12 of $3,000. They likewise approve of payments made to the employees under paragraph 8 and the codicil. Such judicial settlements are binding upon the parties thereto of whom jurisdiction was obtained, and they are concluded by the decrees of the surrogate. Code Civ. Pro. §§ 2550, 2742; Matter of Elting, 93 App. Div. 516; Weintraub v. Siegel, 133 id. 677; Culross v. Gibbons, 130 N. Y. 447; Thorn v. DeBreteuil, supra; Bailey v. Buffalo L. T. & S. D. Co., 213 N. Y. 525.
The accounting proceeding now pending in this court indicates further payments to the widow and the employees. It is my opinion that the discretion of the trustees in making the payments under paragraph 12 has not been abused, and that such payments have been made in good faith. The testator evidences no intention, which I am able to find in the will, that his executors and trustees should show a niggardly policy toward his wife and widow. The will indicates in almost every paragraph an intention for them to be liberal. I am further of the opinion that the provisions of the 12th paragraph are for her support, in exoneration of her own estate and in addition to whatever else she may be entitled to receive under the provisions of testator’s will. Matter of Reed, 22 App. Div. 328; affd., 160 N. Y. 702; Holden v. Strong, 116 id. 471, 475.
The court may act when trustees abuse discretion or act in bad faith; but not otherwise. Jones v. Jones, 8 Misc. Rep. 660; Matter of Van Decar, 49 id. 39; Ireland v. Ireland, 84 N. Y. 325.
It is also urged on behalf of the next of kin that the will *120 unduly and unlawfully accumulates income beyond a period which violates section 16 of the Personal Property Law. The profits upon four shares, or parts of the stock, of. William Allen & Company which the testator failed to attach to the trust; the profits upon twenty shares of the fifty-two shares held for the widow and the profits given to employees who may surrender them under the terms of the will, and any other income which does not pass directly to a beneficiary of a trust, or power in trust, will go to the persons presumptively entitled to the next eventual estate. Real Prop. Law, § 63. The rule laid down by section 63 applies equally to personal property. Matter of Harteau, 204 N. Y. 292. It must be recalled that paragraph 12 operates as a power in trust for the life of the wife upon all the estate other than that which is given by paragraph 8. If any accumulation obtains, it merely results incidentally from the administration of the trust, or from faulty will drafting. The testator never intended and the will does not expressly, or impliedly, authorize the same and it only invalidates the trust to the extent that such accumulations are unlawful. Matter of Martinus, 65 Misc. Rep. 135; Pruyn v. Sears, 96 id. 200; Camp v. Presbyterian Society, 105 id. 139; Matter of Armstrong, 109 id. 472; Matter of Cronk, Id. 516; St. John v. Andrews Institute, 191 N. Y. 254; Matter of Ossman v. Von Roemer, 221 id. 381.
The four shares of stock which the testator failed to annex to the trust and the twenty shares of the fifty-two shares of stock held in trust for the widow, upon her death pass to the trust of the residuum in favor of Eva B. Graham. If there had been a lapsed legacy, or void provision in this will, it would have passed on to the persons taking the residuary estate. Morton v. Woodbury, supra; Langley v. Westchester Trust Co., *121 180 N. Y. 326; Albany Hospital v. Albany Guardian Society, 214 id. 435; Endress v. Willey, 122 App. Div. 110; affd., 197 N. Y. 541; Matter of Sayre, 179 App. Div. 269; Real Prop. Law, § 63, which rule is equally applicable to future interest in personal property. Under a general residuary clause, should any part of the will be declared illegal, such void bequests will fall into the residuum and only a void bequest of the residuum passes to the next of kin. Spencer v. Hay Library Association, 36 Misc. Rep. 398; Utica Trust & D. Co. v. Thomson, 87 id. 31; Riker v. Cornwell, 113 N. Y. 115; Booth v. Baptist Church, 126 id. 215.
The gift to May Sadler, brought into existence by the death of the widow, may be sustained as a trust, or an annuity. The trustees must set aside a sufficient sum to produce the annuity. Upon May Sadler’s death, the principal will pass to the ultimate remainderman.
The gifts to the Trinity Episcopal Church of $150 per annum for a period of ten years and to the Men’s Club of Trinity Parish of $100 per annum for a period of five years may be sustained, because they are gifts in the nature of an annuity or trust in favor of charity. The testimony shows that the men’s club is an unincorporated organization of men of the parish with certain religious activities and duties in connection with the church. The rector is the president of the club. The testator was a member of the club and knew its purposes, activities and needs. It will be treated as a part of the Trinity Episcopal Church and, in order to make the gift effective, the church will be permitted to take. Kernochan v. Farmers L. & T. Co., 187 App. Div. 668; affd., 227 N. Y. 106; Matter of Deming, 112 N. Y. Supp. 170; Matter of Reformed Episcopal Church, 98 Misc. Rep. 145; Matter of Hochhalter, 106 id. 419, 424; Matter of Isbell, 1 App. Div. *122 158. These gifts will continue for the several periods in the event of the falling in of the measuring lives. Peoples Trust Co. v. Flynn, 188 N. Y. 385; Orr v. Orr, 147 App. Div. 753; affd., 212 N. Y. 615. These gifts to May Sadler, and to the men’s club, and to the church, are carved out by the will before the balance is directed to be held in trust for Eva B. Graham.
That part of the 3d paragraph of the codicil which authorizes the trustees, upon the expiration of the second life estate, to pay the profits upon the shares of stock to William Allen & Company, is admittedly illegal. No one contends otherwise. Thorn v. DeBreteuil, 179 N. Y. 64, 78. This void provision will be cut off and it will not be allowed to invalidate the other dispositions of the will. Matter of Abbey, 98 Misc. Rep. 699; Matter of Berry, 154 App. Div. 509; Kalish v. Kalish, 166 N. Y. 368; Matter of Colegrove, supra; Matter of Hitchcock, 222 N. Y. 57; Carrier v. Carrier, 226 id. 114.
Following the void provision is the gift of the residuary estate to Trinity Episcopal Church, preceded, however, by this clause: “ In the event of the sale of the William Allen and Company, or liquidation thereof, whereby it ceases to be a going concern or ceased to do business in the stationery trade in New York City.”
In my opinion, this clause should be eliminated from the will for two reasons: first, because it is a part of the preceding void provision; secondly, it is an ulterior limitation without potency in expressing the intent of the testator. There is no force in the words “in the event ” or in the position that those words occupy in the codicil as would necessitate the absurd interpretation that the ultimate disposition of “ the income ” after the deaths of the wife and Eva B. Graham was intended to depend upon the question whether the *123 business was sold during the life of the wife or afterward. He has provided in express terms for the sale of the business and he could not have intended that his testamentary disposition respecting “ the income ” from the resulting fund should not go into effect in case a purchaser should elect to continue the business. I think that what he probably had in mind was to distinguish between a sale or liquidation which terminated the interest of his estate, and a transaction such as merger or other consolidation which left his estate with a continuing interest. This clause falls within the ruling of Mr. Justice Woodward who, writing for. the Appellate Division of the second department in Matter of Murray, 75 App. Div. 246, said: “ In such a case the rule is quite well settled than an ulterior limitation, though invalid, will not be allowed to invalidate the primary dispositions of the will, but will be cut off in the case of a trust which is not an entirety, as well as in the case of a limitation of a legal estate. ’ ’ Tiers v. Tiers, 98 N. Y. 568, 573, and authorities there cited. “When a will contains separate trusts,” says the court in Haynes v. Sherman, 117 N. Y. 433, 437, “ some of which are legal and some illegal, or various limitations of estates not dependent upon each other or essentially connected, some of which are legal and some illegal, the illegal portions may be stricken out and the other portions permitted to stand; and the books are full of illustrations of such cases.” The main testamentary purpose of the testator should not be frustrated because of its existence. The will was carelessly drawn. Words, sentences and paragraphs were loosely flung together; inconsistencies were created. But a failure to use appropriate and technical language, or a misapplication of legal terms will not defeat an intention clearly manifested by a careful examination of the will. Bliven v. Seymour, 88 N. Y. 470. Grammatical rules *124 may be disregarded and words and limitations transposed, supplied or rejected. Matter of Wardwell, N. Y. L. J. June 11, 1914. Bearing in mind these rules and also the rule of construction as to intestacy, this clause should not be allowed to prevail, when, by cutting it off as a void direction interpolated in the instrument, the will of the testator can be effectuated according to a plain intent. Denison v. Denison, 185 N. Y. 438; Matter of United States Trust Co., 86 Misc. Rep. 603; Fulton Trust Co. v. Phillips, supra; Matter of Colegrove, supra. When the last life estate ends, the trust terminates and William Allen & Company must cease doing business under the direction of the trustees, except for the purpose of winding up its business career, and therefore the sale, or liquidation or ceasing to be a going concern, must all take place in law before, or at the time, Trinity Church is entitled to take as vested remainderman. The event cannot take place thereafter, and consequently there is no force to this inconsistent ulterior limitation. Harrison v. Harrison, 36 N. Y. 543; Tiers v. Tiers, supra; Henderson v. Henderson, 113 N. Y. 1. All trusts end when the purposes for which they were created have been performed. Burke v. O’Brien, 115 App. Div. 574; Hopkins v. Kent, 145 N. Y. 363; Matter of Finck, 103 Misc. Rep. 526; Appell v. Appell, 177 App. Div. 570; affd., 221 N. Y. 602. Whether, upon the termination of the trusts, the church, as a charitable donee and owner, may continue the business is another question which need not be here discussed nor decided.
Should the trust of the stock under paragraph 8 be eliminated as void, the 12th paragraph, and the trust of the residuum of the estate for Eva B. Graham survive as valid. Certainly in that event the contingency relating to the sale of the business will fail, being clearly without value to the will, and the church would take as residuary legatee.
*125 The 16th paragraph of the will, revoked by the codicil, gave the residue of the estate to charity. When William Allen executed the codicil, his intention had only changed as to the ultimate beneficiary. The gift to charity still obtained in his mind. The purpose to omit his own blood relatives from his will, as he had from his life, was quite uppermost in his mind. This brings us to the character of the gift to the Trinity Episcopal Church, which follows the limitation just discussed, in these words: “ I direct the said income from my residuary estate to be paid to Trinity Episcopal Church of Mount Vernon, New York, of which the Rev. W. H. Owen, Jr. is at this time Rector.” This is the clause giving the residue. Is the bequest of the residue a direct gift to the church, or is it a trust to be executed by the trustees under the will for charitable uses? A gift of income tends to vest in the beneficiary the capital of which the income is given. Cammann v. Bailey, 210 N. Y. 19. “ It is a well settled rule both in this jurisdiction and in England that a gift of income of property without limitation with respect to the time of enjoyment, with no other disposition of the corpus, is intended as a gift of the corpus. ’ ’ Matter of Goldmark, 186 App. Div. 447, citing Hatch v. Bassett, 52 N. Y. 362; Locke v. Farmers Loan & Trust Co., 140 id. 146; Tabernacle Baptist Church v. Fifth Ave. Baptist Church, 60 App. Div. 327; Matter of Dibble, 76 Misc. Rep. 413.
No particular mode of expression is necessary.to constitute a residuary legatee. It is sufficient if the intention of the testator be plainly expressed in the will. 2 Williams (7th Am. ed.), 801, quoted with approval in Morton v. Woodbury, supra.
The Trinity Espiscopal Church of Mount Vernon was incorporated October' 21,1856, pursuant to chapter 60 of the Revised Laws of 1813, relating to religious *126 corporations, the certificate of incorporation being filed in the Records of Religious Societies, liber B, page 209, Westchester county clerk’s office. This revision embraced the whole subject of religious corporations. People ex rel. Sturges v. Keese, 27 Hun, 483. Religious bodies are now governed by the present Religious Corporations Law (Consol. Laws, chap. 51), and the General Corporation Law (Consol. Laws, chap. 23). The object of its corporate powers is the promulgation of religion for the benefit of mankind and the general welfare of society and the government. Section 3 of the Religious Corporations Law (Laws of 1909, chap. 53) relates to filing and recording of certificates of incorporation of religious corporations, and section 6 relates to their acquisition of property. By the General Corporation Law (Laws of 1909, chap. 28), section 9, the certificate of incorporation shall be presumptive evidence of their incorporation and, by section 11, every such corporation shall have power to acquire property by gift, devise or bequest.
Religion is a public charity. In Matter of Robinson, 203 N. Y. 380, Judge Chase said: “ The spirit of love and religion which is the basis of charity should be exercised in construing the provisions of such acts.” Charity is also defined in Jackson v. Phillips, 14 Allen, 539, 556; Matter of Moore, 66 Misc. Rep. 116; Utica Trust & Deposit Co. v. Thomson, 87 id. 31, 47. The use must be public in its nature.
The church is authorized to take property by devise or bequest and it may hold it for the purposes and objects for which it was incorporated. A. gift to trustees of a corporation is a gift to a corporation. Chamberlain v. Chamberlain, 43 N. Y. 424; Johnston v. Hughes, 187 id. 444; Rector, etc., v. Morgan, 88 Misc. Rep. 702; Fowler Charitable Uses, Trusts & Donations, 120.
*127 A direct gift to a charitable corporation is not a trust in the eye of the law. It is a charitable donation. Fowler Charitable Uses, Trusts & Donations, 72, 84; Wetmore v. Parker, 52 N. Y. 459; Coggeshall v. Pelton, 7 Johns. Ch. 292; Bird v. Merklee, 144 N. Y. 544; Matter of Griffin, 167 id. 71; Matter of Durand, 194 id. 477; Sherman v. Richmond Hose Co., 186 App. Div. 417; Johnston v. Hughes, 187 N. Y. 444; Fralick v. Lyford, 107 App. Div. 543; affd., 187 N. Y. 524; Congregational Unitarian Society v. Hale, 29 App. Div. 396; Kingsbury v. Brandegee, 113 id. 106; Warburton Avenue Baptist Church v. Clark, 158 id. 230.
During the struggle, in the period from the year 1830 to the time when Holmes v. Mead, 52 N. Y. 332, was decided, the courts differed as to whether the law of charitable trusts still obtained in this state, but the law of charitable donations always obtained and was considered in Yates v. Yates, 9 Barb. 324, 343, approved in Bascom v. Albertson, 34 N. Y. 584, as being the better way to effectuate a testator's charitable wishes. A perfect charitable donation to corporations now involves a donor who is capable, and a donee having capacity to take and hold the donation. The charter of the corporate donee is the usual criterion of its power or capacity to take and hold the donation. Riker v. Leo, 115 N. Y. 93, 102. A corporation having capacity to take, may take as a residuary legatee. Rainey v. Laing, 58 Barb. 453; Burrill v. Boardman, 43 N. Y. 254; Cruikshank v. Home for Friendless, 113 id. 337.
Because charitable donations do not fall within chapter 703 of the Laws of 1893, which re-established charitable uses and trusts, the question arises whether there is any authority lodged in the state, through its officers, or its courts, to control the use of the charity given in this direct manner. Fowler, in his *128 work on Charitable Uses, Trusts and Donations, page 72, says: “ So while the property donated to a corporation is impressed in the hands of a charitable corporation with a permanent trust character, such character is impressed by the State in the instrument of incorporation and not by a private donor — a distinction of some consequence where the state assumes to regulate charitable donations on the basis of common trusts.” Fosdick v. Town of Hempstead, 125 N. Y. 595; Matter of Ingersoll, 131 id. 573; Bird v. Merklee, supra.
Again, Fowler says, at page 123: “As most permanent and indefinite charitable donations are by the past policy of the State now required to be made to charitable corporations, the remedies for a breach of the terms of the founders’ or donors’ gifts are generally to be sought in the laws of the State regulating charitable corporations, or in the law relating to a breach of common law conditions. The terms of the gifts ordinarily merge, as it were, in the charter of the donee corporation. If the true intent and purpose of the franchise of such a corporation is violated the State has an interest in suppressing the corporation, and may take away its charter.” Buell v. Gardner, 83 Misc. Rep. 513; affd., 168 App. Div. 278; People v. North River Sugar Refining Co., 121 N. Y. 582; People v. Powers, 8 Misc. Rep. 628; affd., 83 Hun, 449; reversed on other grounds, 147 N. Y. 104; Laws of 1875, chap. 79; Laws of 1876, chap. 176.
The amendment of 1893, chapter 703 (now section 12 of the Personal Property Law), re-established charitable uses and trusts and again tolerated inalienability. The distinction between a trust for charitable uses and a gift for charity, however, seems still to be recognized. Matter of Griffin, supra; Fralick v. Lyford, supra; Matter of Freudenheim, 108 Misc. *129 Rep. 528. All the recent decisions of the courts tend to make effectual public and charitable gifts when it is possible. Matter of Robinson, 203 N. Y. 380; Matter of Cunningham, 206 id. 601; Matter of MacDowell, 217 id. 454; Butterworth v. Keeler, 219 id. 446; Matter of Norton, 165 App. Div. 787; Matter of Groot, 173 id. 436; affd., 226 N. Y. 576; Torrey v. Day, 81 Misc. Rep. 39; Buell v. Gardner, supra; Utica Trust & Deposit Co. v. Thomson, 87 Misc. Rep. 31. In Morris v. Edwards, 227 N. Y. 141, a recent case, a gift was made for masses in the Roman Catholic Church, Judge Pound said: “ The test of reasonableness has no place between next of kin and the charitable trust, but will in a broad and liberal spirit uphold the will as it was written.”
The will of the testator gives the whole estate to the executors upon trust; to pay the income and, if need be, the corpus to the wife; to pay the income to Eva B. Graham; to pay the income to the Trinity Episcopal Church. It is my opinion that the legal construction of the will is that the trusts terminated at the death of the life beneficiaries; that a charitable trust was not intended nor created by the testator, and that the gift'of the income to the church is a gift of the principal vesting the absolute ownership. Adams v. Perry, 43 N. Y. 487, 497; Locke v. F. L. & T. Co., 140 id. 135, 145; Hatch v. Bassett, supra; Bird v. Merklee, supra; Smith v. Havens Relief Fund Society, 44 Misc. Rep. 594; affd., 118 App. Div. 678. If I am wrong in this, the appellate court will correct' it. The question is relatively unimportant, except as to accuracy, since the income flowing from the gift will reach the charity, either as a charitable use through the trustees under the will, or as a charitable donation through the care and control by the corporation itself.
By section 17 of the Decedent Estate Law (formerly *130 chapter 360, Laws of 1860) “ No person having a husband, wife, child or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of one-half, and no more.”
Matter of Tone, 186 App. Div. 361, 366: “ The act of 1860 imposed a limitation on the right of the testator to devise, under the circumstances named, more than one-half of his estate to the corporations therein specified. This statute was not a mortmain act. (Amherst College v. Ritch, 151 N. Y. 282, 333.) ‘ It is not against public policy to allow gifts to charitable, benevolent, scientific, or educational institutions. The law allows and encourages such gifts, and those who make them are commended as the benefactors of their race.’ ”
The provisions of this statute may be insisted upon by any person who would derive a benefit therefrom although not one of the persons designated in the section. Robb v. Washington & J. College, 185 N. Y. 485. In the instant case, the direct gift to the church brings it within this statutory law of limitation. Decker v. Vreeland, 220 N. Y. 332; Barber v. Terry, 224 id. 334. In Allen v. Stevens, 161 id. 122, the gift was to individuals in trust for a charitable purpose and the court held this law did not apply. Applying this rule of limitation to the instant case, if no trusts had intervened, we would have the following result: The entire estate at death of testator, less debts, is valued at about $100,000, and must be the basis of computation. The church may have $50,000 and no more. Where there is a residuary estate, the expense of *131 administration must fall upon that. Matter of Brooklyn Trust Co., 179 App. Div. 262.
Therefore the effect of the statute is to limit the amount of the gift to charity. The church may take a fixed sum measured by half of the estate, less the debts. It becomes a general legatee for the purpose of casting the expenses of administration on the next of kin. Matter of Brooklyn Trust Co., supra. What is left is the residuary estate. It must bear the expense of the administration. The testator died intestate as to that part and it is vested in the next of kin and in the widow under the Statute of Distributions, each taking a half part thereof.
The leading case of Hollis v. Drew Theological Seminary, 95 N. Y. 166, was brought to construe a will, where the life estate was not terminated. It treats of the manner of ascertaining whether more than one-half of an estate was devised in violation of the law of 1860. The Northampton or Carlisle Tables of Mortality are accurate, but problematical in the instant case, as the trusts, if valid, are still running and may continue for years, while the discretionary power under the 12th paragraph permits the corpus of the estate to be used for the support and maintenance of the widow. To what extent the corpus may be depleted will remain uncertain. A computation must be deferred until the time of distribution and settlement of the final accounts of the trustees when there will be no uncertainty, under the authority of Hollis v. Drew Theological Seminary, supra; Matter of Durand, 194 N. Y. 477; Rich v. Tiffany, 2 App. Div. 25; Matter of Strang, 121 id. 112.
The widow was seventy-one years of age at the death of testator. The evidence fails -to show Mrs. Graham’s age at that period but, if she had been under fifty-two years of age, her expectancy of life would' result in the church taking the whole estate.
*132 The following cases also write upon the subject: Matter of Teed, 59 Hun, 63; Matter of Hamilton, 100 Misc. Rep. 72; Matter of Brooklyn Trust Co., 92 id. 695; Matter of Runk, 55 id. 478; Garvey v. Union Trust Co., 29 App. Div. 513; Matter of Colburn, 157 N. Y. Supp. 676; Frost v. Emanuel, 152 App. Div. 687; Matter of Franklin Trust Co., 190 id. 575.
There is nothing in the will to prevent the life beneficiary of income, who is also the widow of decedent, from taking a distributive share of the corpus as to which the decedent died intestate. Greer v. Chester, supra; Mount v. Mount, 108 Misc. Rep. 156, 164.
The final judicial settlement of the trustees will, of course, undertake to make a proper distribution of the estate between the charity, the next of kin and the widow, or her legatees or next of kin.
No testimony was offered by the next of kin in support of the objections relating to the accuracy of the sums of money accounted for in the pending accounting proceeding received by the trustees as 'the net profits of the business of William Allen & Company and consequently they are dismissed.
As to the item of $500 advanced by the trustees to the widow for the purpose of paying her personal attorney in the matter of the construction of the will, he appearing specially in support of paragraph 12 thereof. This payment is objected to by the next of kin. Payment will be approved under the ruling in Matter of Delaplaine, 3 N. Y. Supp. 202.
The only other question relates to a certain mortgage made by said Annie B. Allen' to the testator. Is it an asset of the estate?
The mortgage was for $10,000, dated December 1, 1906, and recorded in the office of the register of Westchester county on the 8th day of December, 1906, in 'liber 1430 of mortgages, at page 275. It purports to *133 mortgage the home plot of Annie B. Allen, No. 341 South Third avenue, Mount Vernon. A portion of the mortgaged property was, from time to time, released by William Allen. The executors account for it. No interest was ever paid upon it. The account of the executors shows that they have received $1,400 and released a certain portion of the 'mortgaged property.
The next of kin contend that the mortgage is a valid and existing indebtedness still owing by Annie B. Allen. She asserts the mortgage never had legal inception because there never was a valid consideration passing; that the mortgage never came into existence; that it was delivered conditionally; and that, if there was a mortgage, it has been paid, or forgiven, or discharged by the terms of the will.
Section 840 of the Code of Civil Procedure says: “A seal upon an executory instrument * * * is only presumptive evidence * * * which may be rebutted. ’ ’ Under the rule in Baird v. Baird, 145 N. Y. 659; Smith v. Botterweich, 200 id. 299; Niblock v. Sprague, 200 id. 390, and Grannis v. Stevens, 216 id. 583, evidence was offered to contradict the legal import of the mortgage. The evidence, other than a self-assertive statement of the testator, was meagre and unsatisfying.
A paper writing was offered in evidence in support of the claim of Annie B. Allen that the mortgage lacked consideration, and further, in support of the claim that if it was ever a valid mortgage, it had been paid. This writing was apparently prepared and signed by the testator and witnessed in a formal manner. It gave various reasons for the consideration of the mortgage and concludes with the remark that “ The mortgage only become an asset of my estate upon death of my wife when it begins to draw interest therefrom.” *134 William Allen predeceased his wife. It is argued that the mortgage never came into being because, he says, it shall only “ become an asset upon the death of my wife.”
The same paper writing has indorsed upon it in the handwriting of the testator, under date of January, 1914, a further statement relating to the receipt by William Allen of certain mortgages made by purchasers of portions of the home plot of Mrs. Allen, testified to as having been given at the time of the sale of portions of the property covered by the mortgage in question. The whole written statement of the testator is confusing. It may indicate that he was trying to state the reasons for the consideration when none existed, as well as trying to tell how he got his money back in the event that the mortgage was ever a valid one. He also indorsed upon the same instrument these words, “ Whether to cancel this mtge. as paid off is questionable. If upon death of my wife the property 341 South 3rd Ave. would sell better with this mtge. thereon. ’ ’ The bond and mortgage and statement were found among the papers of the testator and those of Annie B. Allen, in a safe deposit box, inclosed in an envelope, which had the following indorsement thereon in the handwriting of the testator: “ Bond and Mortgage— Annie B. Allen to Wm Allen, 341 South 3rd Ave, not considered an asset $10,000 — Put in Mt V. T. Co. Safe.”
Annie B. Allen contends that this statement and indorsement on envelope means that the mortgage, if ever a valid one, had been paid off. She further contends that if it was a valid and enforceable obligation and not paid off as above stated, that then the testator forgave it in his lifetime as indicated by the paper writing and envelope. Brinckerhoff v. Lawrence, 2 Sandf. Ch. 398; Leask v. Dew, 102 App. Div. 529; affd., 184 N. Y. 599.
*135 There is a further contention, which to my mind is the most important and controlling one: that the debt, if it ever existed, was discharged by testamentary disposition. We find in the 13th paragrah of the will this provision: “I direct my executors hereinafter named to discharge and pay off all monies in the ledger of William Allen and Company as advanced upon real property held in the name of William Allen or Annie B. Allen, that the monies derived by me from the profits of the business in previous years are entered in said ledger only as a personal memorandum and do not represent any advances of money and are neither a charge against William Allen or Annie B. Allen.” There was introduced in evidence a book, a ledger, so-called, found in the office of William Allen & Company, containing many entries, all in the handwriting of decedent and all regarding his several properties and assets. The entries are in detail, extending over a period of years, and relate to many mortgages held by him upon property of various persons. On page 177 of this book is found the following entry in the handwriting of the testator: “ 341 South 3rd Avenue, owned by A. B. Allen. No interest collected. This mortgage given by Annie B. Allen to Wm Allen to cover sums of money used in building 340 South Second Avenue and paying off mortgages — held only as a memorandum.” This is followed by reference to fire insurance policies apparently upon the building upon said plot of ground, 341 South Third avenue. It is urged by the next of kin that this particular book is not a ledger and was not the book referred to in the 13th paragraph of the will. It is my opinion that the book produced in evidence was the “ ledger ” to William Allen, and is the book referred to in the 13th paragraph of the will. Suppose no ledger had been found, or produced, could it then be well argued *136 that the legacy given by the 13th paragraph fails t I think not.
The will was dated August, 1905. This particular entry was apparently made in 1907. It is said that the will was made prior to the entry in the book, but in January, 1914, the testator made a codicil to his "will which amounted to a re-publication of the will as of the date of the codicil. Van Alstyne v. Van Alstyne, 28 N. Y. 375. Wills and codicils speak from testator’s death. Matter of Werlich, 190 App. Div. 353. In Matter of Twombly, 24 Misc. Rep. 51, the court held that entries in books of account became, by a reference thereto in the will, a part of the will, while also holding that the accounts had been cancelled and discharged. Webster v. Gray, 54 Hun, 113; Tonnele v. Hall, 4 N. Y. 140; Locke v. Farmers’ Loan & T. Co., 140 N. Y. 135.
Section 2667 of the- Code relates to the contents of inventory and says: ‘ ‘ The inventory must contain a particular statement of all * * * securities * * * and of all debts owing by such executor or administrator to the deceased whether discharged by the will or not.” This particular mortgage, if a valid one, must be inventoried (Matter of Consalus, 95 N. Y. 340) and treated as an asset for the time being. An inventory was filed March 16, 1915. It included the mortgage in question. It was not sworn to by Annie B. Allen.
Section 2673 of the Code relates to assets due from executor to testator, effect of discharge by will, and says: “ The naming of a person executor in a will does not operate as a discharge or bequest of any just claim due or to become due which the testator had against him; * * *. The discharge or bequest in a will of a debt or demand of the testator against an executor named therein, or against any other person, *137 is not valid as against the creditors of the deceased; but must be construed only as a specific bequest of said debt or demand; * * The debt of Mrs. Allen must be applied to her legacy. It is a legal offset in this case. Matter of Burdick, 79 Misc. Rep. 168. The executors and trustees have accounted for it and it now comes under section 2679 of the Code relating to the determination of issues arising between representatives and the estate, which says: “ Where a contest arises, between the accounting party and any of the other parties, respecting property alleged to belong to the estate, but to which the accounting party lays claim individually; or respecting a debt alleged to be due by the accounting party to the decedent, or by the decedent to the accounting party, the contest must be tried and determined in the same manner as any other issue arising in the surrogate’s court.”
Therefore the direction to discharge and pay off all moneys advanced upon real property set forth in the 13th paragraph of the will of the testator must be construed as a specific bequest of the mortgage in question. The will gave the bequest. It took effect at the death of the testator.
It is urged by the next of kin that in all the prior accounts, as well as the pending account, the mortgage is scheduled as an asset of the estate, and that, therefore, Annie B. Allen is estopped from claiming the mortgage as paid or claiming that the amount due thereon is a bequest to her. It was not necessary for the widow to set up a defense. The will creates an offset. The testator meant to give and forgive the indebtedness and it does not lie in the power of Annie B. Allen, an executor and trustee, to deny it, or estop herself by declaring the mortgage an asset in any of the proceedings in the matter of an accounting. Any reference to it whatsoever is for accuracy. It was *138 her duty to account for it. In the instant case creditors do not intervene. There are none. I am willing to assume that the affidavit required by section 2732 of the Code, to be annexed to the several accounts, stating the fact of the possession of the bond and mortgage, was coupled with the right given by the Code and retained by Annie B. Allen to dispute the fact that the mortgage was a lawful asset of the estate, or that it was offset by the bequest, to be heard and determined upon the settlement of the accounts. Morris v. Morris, 172 App. Div. 722. Thus the situation is this: The mortgage, if valid and an asset, is a debt against Annie B. Allen; the will gives to her a sum equal to the amount of the mortgage — by directing the discharge of all indebtedness. One hand washes the other. A question relating thereto arises. The Code states how and when the contest shall be determined. The contest is being tried in this proceeding. The court, under the powers contained in section 2510 of the Code, has the right to determine the issue. Matter of Holzworth, 166 App. Div. 150; affd., 215 N. Y. 700; Matter of Watson, id. 209; Matter of Malcomson, 188 App. Div. 600; Matter of Coombs, 185 id. 312; Sexton v. Sexton, 64 id. 385; affd., 174 N. Y. 516; Matter of Cavanagh, 121 App. Div. 200. It is, however, limited to finding whether or not the mortgage is an asset of the estate and cannot proceed to decree its satisfaction. Matter of Clyne, 72 Misc. Rep. 593; Matter of Ammarell, 38 id. 399; Cromwell v. Kirk, 1 Dem. 599.
I am of the opinion that the mortgage is not an asset of the estate, because it is offset by the bequest given by the 13th paragraph of the will. The mortgage abates. There is a difference between a defense and a setoff. Lloyd v. Lloyd, 1 Redf. 399. The mortgage should be discharged by the executors of the will *139 and Annie B. Allen should give a receipt for the bequest under the 13th paragraph of the will. The sum of $1,400 received by the trustees for a release of a part of the mortgaged property should be repaid to Annie B. Allen.
Submit decrees according to this opinion, relating to the construction of the will, and the approval of the account, upon two days’ notice to all attorneys appearing. Costs to be allowed to all parties who have appeared in the matter of the construction of the will (Matter of Sayre, 179 App. Div. 269; Matter of Bush, 106 Misc. Rep. 227), costs and allowance to the petitioner in the accounting proceeding to be fixed in the decree when entered, to be paid out of the estate.
Decreed accordingly.